## S98A0310. ROBBINS v. THE STATE.

(499 SE2d 323)

HINES, Justice.

Willie Robbins appeals his convictions for malice murder, burglary, and possession of a firearm during the commission of a felony.[1] For the reasons which follow, we affirm.

Viewed in favor of the verdict, the evidence showed that Robbins and the victim, Raymond Brown, were both dating a woman named Herrington. On the afternoon of September 11, 1995, Robbins physically attacked Brown as Brown was leaving Herrington's home, and followed Brown after Herrington broke up the altercation. Herrington then went to her aunt's home where Robbins physically attacked Herrington. Robbins then followed Herrington to work, and physically attacked her there; that altercation ended before 3:30 p.m., the time at which Herrington was to report for work. At about 3:45 p.m., while Brown was trimming the hedges in his yard, Robbins was seen driving his car into Brown's driveway and "jumping" out of his car. At about 6:00 p.m., Robbins was seen at Herrington's house apparently looking for something in his car and placing something in Herrington's car. He was also observed looking at his clothes and hands.

Robbins was then seen at about midnight at Herrington's workplace, when her shift ended. He confronted Herrington's co-workers in an attempt to locate her and one of the co-workers noticed a silver .44 caliber pistol in Herrington's car, which Robbins was driving. Robbins later found Herrington at her aunt's home and persuaded Herrington to return to her home with him. He spent the night there despite being told to leave. At about 9:00 a.m. on the morning of September 12, the police removed Robbins from Herrington's home and forced him to return his keys to Herrington's house and car.

Later that morning, Brown was found dead in his home. He had been hit in the head with a blunt object, shot twice in the head from close range, and had been shot in the arm and the neck. There was a trail of blood leading from the yard into Brown's house and blood splatters in the hall. A hedge trimmer was found in the yard where Brown was last seen with Robbins. A .44 caliber magnum bullet

---

[1] The crimes were committed on September 11, 1995. On November 17, 1995, Robbins was indicted on one count of malice murder, one count of burglary, and one count of possession of a firearm during the commission of a felony. He was tried before a jury on December 3-6, 1996, and found guilty on all counts. On December 6, the court sentenced Robbins to life imprisonment for malice murder, twenty years for burglary, and five years for possession of a firearm during the commission of a crime, all to be served consecutively to each other. Robbins moved for a new trial on January 6, 1997, which was denied on October 8, 1997. A notice of appeal was filed on October 28, 1997, the appeal was docketed in this Court on November 18, 1997, and orally argued on February 16, 1998.

unspent cartridge of CCI brand was found in the victim's yard, a .44 caliber magnum spent bullet that was of design used by the CCI brand was found in the victim's forearm, and another bullet fired from the same gun was lodged in the kitchen wall. CCI brand .44 caliber magnum cartridges were also discovered in two cars Robbins owned. Robbins had purchased a FIE brand .44 caliber magnum pistol from a pawn shop in May 1989. The marks on the bullets recovered from the crime scene were consistent with the type of marks made by FIE brand .44 caliber magnum pistols, although no specific murder weapon was identified. A tee-shirt owned by Robbins had a blood stain matched to the victim's blood.

Robbins made a statement to investigators in which he admitted going to Brown's home and fighting with him, but he claimed that this was before he had confronted Herrington at her aunt's home and before he had followed her to work. A State's witness saw Robbins leave his car at Brown's home at approximately 3:45 p.m., 15 or 20 minutes after Robbins had confronted Herrington at her workplace. Other witnesses testified Brown had been at their place of business from 2:30 p.m. to 3:15 p.m. and that he showed no evidence of having been in an altercation.

1. Robbins argues that the evidence was insufficient to support the convictions for murder and burglary, and therefore insufficient to support the conviction for possession of a firearm during the commission of a felony. He contends the evidence was entirely circumstantial and failed to exclude all reasonable hypotheses save that of his guilt. OCGA § 24-4-6. However, questions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. *Roper v. State*, 263 Ga. 201 (1) (429 SE2d 668) (1993).

Robbins specifically argues that burglary cannot be shown because there is no evidence that he entered or remained in Brown's home with the intent to murder Brown, and that Brown could just as easily have been shot outside and crawled inside. However, the nature of the wounds, the position of the body, and the presence of a spent bullet lodged in an interior wall allowed the jury to conclude that the murder was committed inside the house. The evidence also authorized the jury to find that Robbins was the person who murdered Brown. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Robbins also contends the court erred in allowing inadmissible hearsay testimony. An audio tape of Robbins' custodial statement was played for the jury. During that statement, Robbins was asked

about a .44 caliber magnum FIE brand pistol he had purchased from a pawn shop and stated that the pistol had been consumed in a car fire some months before the murder. During direct examination of investigator Boyd, the State inquired about efforts Boyd had made to determine whether a pistol was consumed in that car fire. Boyd responded that he located the salvage yard where the burned car had been taken, and that he had searched the car and found no pistol or remains of a pistol. The State then asked whether Boyd had spoken with anyone else who might know whether a pistol had been in the car. Over Robbins' hearsay objection, Boyd testified that firemen who responded to the car fire told him no ammunition went off during the fire and they saw no pistol in the car. Boyd also testified that the owner of a salvage yard where the vehicle had been temporarily stored stated that no one had disturbed the car and that he had not seen a pistol, and that the insurance adjuster also stated he did not see a pistol in the car.

The State's response to Robbins' hearsay objection was that the testimony was admissible to explain the officer's conduct. See OCGA § 24-3-2. As we have frequently noted, that is not a basis upon which to admit testimony such as this. The "conduct" of an investigating officer will rarely need to be "explained," as the motive, intent or state of mind of such an officer will rarely be a matter "concerning which the truth must be found." *Brinson v. State*, 268 Ga. 227, 229 (3) (486 SE2d 830) (1997); *Renner v. State*, 260 Ga. 515, 517 (2) (397 SE2d 683) (1990). All officers have a professional obligation to initiate and continue investigations which they in good faith believe involve criminal conduct. *Render v. State*, 267 Ga. 848, 849 (2) (483 SE2d 570) (1997). The testimony complained of is plainly hearsay, and it was clearly error to admit it.

Robbins argues that the testimony was harmful as it portrayed him as a liar and provided a crucial link between him and the murder weapon. It is certain that admission of such blatant hearsay can result in harm to a defendant. See *Render*, supra. However, we must conclude that the hearsay in this instance did not contribute to the verdict and was thus harmless. *Brinson*, supra. Boyd had already testified that he had thoroughly examined the car, including prying open the glove compartment that had become fused to the dashboard during the fire, and that his search revealed no pistol or remains of a pistol. Herrington testified that when the car, which was hers, had burned, Robbins had not informed her of any pistol being in the car. Another witness who had seen Robbins on the night of September 11 testified that he saw a pistol in the car Robbins was driving that had the appearance of the .44 caliber magnum pistol Robbins stated was burned in the car fire. One witness who had ridden in Robbins' car after the fire had seen a pistol under the seat that he described as

larger than a .38 caliber. Also, live .44 caliber magnum ammunition was found in two cars Robbins was driving the day of the murder, despite his statement to investigators that he did not then own a .44 caliber magnum pistol or any pistol larger than a .38 caliber. Thus, substantial evidence other than the hearsay was presented to cast doubt on the credibility of Robbins' story about the destruction of a .44 caliber magnum pistol, and evidence other than the hearsay linked him to such a weapon.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 4, 1998 —
RECONSIDERATION DENIED MAY 29, 1998.

*Robert L. Persse,* for appellant.

*R. J. Martin III, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.