551 S.E.2d 813 (2001)
250 Ga. App. 403
HOANG
v.
The STATE.
No. A01A0132.
Court of Appeals of Georgia.
July 5, 2001.
*814 Novy, James & Vaughan, Eugene Novy, Deborah M. Vaughan, Atlanta, for appellant.
Daniel J. Porter, District Attorney, Nancy J. Dupree, Assistant District Attorney, for appellee.
PHIPPS, Judge.
In connection with the death of 16-month-old B. D., a grand jury indicted Myhoa Thi Hoang on two counts of felony murder,[1] two counts of cruelty to children,[2] and one count *815 of contributing to the deprivation of a minor.[3] A jury found her guilty of one count of cruelty to children by unlawfully and maliciously causing B.D. excessive pain by failing to seek medical treatment after the child had sustained a serious head injury, guilty of contributing to the deprivation of a minor, and not guilty of all other counts. Hoang appeals on the grounds of insufficient evidence and an inadequate jury charge. Because the evidence was sufficient and the charge was adequate, we affirm.
On appeal from a criminal conviction, this court views the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence.[4] We do not weigh the evidence or determine witness credibility but only determine whether under the standard of Jackson v. Virginia[5] the evidence is sufficient to support a verdict of guilt.[6]
Viewed in this light, the evidence showed that on the evening of March 16, 1999, B.D. had a fever and his father made plans to take him to his pediatrician the next morning. At 8:30 a.m., B.D. and his father arrived at the pediatrician's office. B.D.'s temperature was 103 degrees. At the doctor's office, he was given Advil, Tylenol, and a lukewarm bath to bring down his fever. His temperature came down "a couple of degrees." A pediatric nurse practitioner's examination revealed that his ear drums were infected. B.D. was given an antibiotic injection, and he and his father left the doctor's office at about 10:15 a.m.
Fifteen minutes later they arrived at Hoang's residence. Hoang had been B.D.'s babysitter for the previous six months. At the time of the trial, she was 31 years old, married, and the mother of three sons, ages nine, four, and two.
B.D. was crying when he arrived at Hoang's residence, and his father told Hoang that he had an ear infection and a fever, that the doctor had already given him some medicine, and that he did not need any more. His father then left B.D. in Hoang's care. Hoang tried to console B.D., but he could not be comforted. He would not play or sit on the floor as he normally did, but instead wanted to lie down. Hoang fed him warm cereal; afterward, he began to cry again. Hoang put B.D. in an automatic swing, where he stared at the ceiling, and moments later, he vomited. Hoang testified that B.D. looked pale and "very, very, very sleepy." She put him down for a nap, and he slept until 1:30 p.m., when he wakened, crying and with a high fever. Hoang testified that she wanted to give him some medicine for his high temperature but decided that he needed to eat something before taking it. When she offered him food, B.D. would not eat.
Hoang testified that at about 1:40 p.m. B.D.'s body shook for two or three minutes. She put lemon juice in his mouth. Hoang, a native of Vietnam, testified that in her native country, lemon juice is given to babies to relieve high temperatures and seizures. When the seizure passed, B.D.'s temperature was 104.8 degrees. A few minutes later she noticed that B.D.'s fever had "come down" and thought the child was "okay." But he began to cry again. Around 1:45 or 1:50 p.m., B.D.'s hands and feet started turning cold.
Hoang testified that B.D.'s parents had instructed her to call them first if anything ever happened to their son. She searched for his father's telephone number, but could not locate it. At approximately 2:00 or 2:10 p.m., she attempted to call B.D.'s mother, but she was at lunch. Hoang called her husband to get the telephone number of B.D.'s father, but her husband told her that he did not have the number and advised her to continue trying to reach B.D.'s mother. She called B.D.'s mother again ten minutes later and *816 left a message with a co-worker asking that the mother return her call because her child was "very sick." Ten minutes later, when Hoang tried calling B.D.'s mother again, the same co-worker told her that he could not find her. She testified that she asked him to search for her again, stating she was "very scared" and did not know what to do. B.D.'s body was "very cold, and he had stopped crying." After a third call, the mother returned Hoang's call. It was close to 2:45 or 2:50 p.m.
Hoang told B.D.'s mother that her child had been vomiting and "shaking," that he had a high temperature, that he was then "cold," and that she or his father should come to her house immediately. B.D.'s father arrived there between 3:15 and 3:30 p.m. B.D. was unconscious; his lips were purple; his arms and legs were cold. Hoang told B.D.'s father that he needed to take B.D. to the hospital or doctor. The father drove B.D. to a children's emergency center, 15 minutes away. The attending emergency room physician found B.D. not breathing and without a heart beat; his pupils were fixed and dilated.
B.D. was resuscitated and then given a CAT scan. The attending physician testified that the scan showed that B.D. had extensive skull fractures involving both sides and the back of his skull as well as a large amount of subdural hematoma. He opined that B.D.'s skull fracture had occurred as a result of an impact similar in force to a motor vehicle accident. B.D. also had retinal hemorrhaging consistent with shaking coupled with striking. The physician testified that given the extent of the injuries, he would not have expected B.D. to live more than two to three hours after sustaining the impact.
B.D. was rushed by helicopter to another children's hospital, where a pediatric neurosurgeon operated on him at approximately 5:00 p.m. The surgeon testified that B.D. had extensive skull fractures and that his brain was bruised and swollen. He opined that B.D.'s severe head injuries were caused by "forceful blunt trauma to his head," stating that the severity of the injury was inconsistent with a household fall or a fall from a bed[7] and that the impact would have rendered the child unconscious immediately and precluded regaining consciousness.
B.D. died the next day. A county medical examiner performed an autopsy and found an eleven and one-half inch skull fracture extending from the left side, around the back, then to the right side of B.D.'s head. Branching from that fracture were seven additional skull fractures ranging in length from a quarter of an inch to five and one-half inches. The examiner testified that the fracture pattern was not typically associated with accidental injuries that occur around the house, but that these injuries were inflicted upon B.D. with some type of blunt object. He opined that the injury was not caused by B.D.'s bumping his head on a car door frame.[8]
1. Hoang contends that the evidence was insufficient to authorize a conviction for cruelty to children because there was no evidence of malice. OCGA § 16-5-70(b) provides that a person is guilty of cruelty to children when that person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain.
For purposes of this Code section, malice in the legal sense[ ] imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense. Intent is a question of fact to be determined upon consideration of words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.[9]
*817 In support of her argument that there was no evidence of malice, Hoang points out that the jury found her not guilty of other counts which also require malice. But consistency in the verdict is not necessary, and every count of an indictment is regarded separately.[10] Thus, even if the verdicts are inconsistent, reversal is not required.[11]
Hoang argues that there was no showing that she inflicted B.D.'s head injury. The jury found her not guilty of cruelty to children "by fracturing his skull." She was convicted of cruelty to children for "failing to seek medical treatment after [B.D.] had sustained a serious head injury." And although she also argues that there is no showing that she knew about the injury and, with such knowledge, wilfully failed to seek medical treatment, actual knowledge of the specific type of injury is not required to show malice for the purpose of OCGA § 16-5-70.[12]
Hoang also maintains that she believed an ear infection was causing B.D.'s sickness and that she treated his fever and seizure with lemon juice, "according to her knowledge and culture." She argues that while such "remedy" may have been a mistake in judgment, such mistake is not evidence of malice. But the evidence presented in this case does support a finding of malice.
Hoang admitted that she saw B.D. suffer from discomfort, vomiting, a seizure, a temperature of 104.8 degrees, a "cold" body, and unconsciousness. The jury, assessing the weight of the evidence and the credibility of the witnesses, was authorized to find as no justification or excuse Hoang's explanations that she was unaware that B.D.'s illness was more severe than an ear infection, that she administered a cultural remedy of lemon juice, and that she was adhering to the instructions of B.D.'s parents to call them first.[13] The evidence showed that despite the fact that she had been told only that B.D. had an ear infection and that she had given him lemon juice for the fever and seizure, Hoang realized almost immediately after giving it that the child required medical attention. Yet nothing in the record shows that Hoang sought any medical care for him. Hoang testified that she understood that she was responsible for B.D.'s care and safety. She also testified that had she witnessed her two-year-old son suffer like B.D., "[she] would [have] drive[n] him to the hospital." In explaining why she did not seek medical treatment for B.D., she stated that the child's parents had instructed her to call them first if something happened to their son. She stated, "If the mother had told me to call 911 I would have called 911." In addition, she accounted for her failure to call 911 by stating that had she done so and then gone to the hospital with B.D., her oldest child would have been unable to get inside the home when he arrived. Hoang continually attempted to reach B.D.'s father for at least 90 minutes, and upon his arrival she told him that B.D. needed medical attention immediately, thus demonstrating that she had assessed B.D.'s symptoms of pain and was aware that B.D.'s condition was severe and that he was in urgent need of medical care. The jury was authorized to find that Hoang wantonly and wilfully failed to obtain medical care for B.D. and was aware of the likely harm to him as a result of her failure to act.[14] We conclude that the evidence was sufficient to find malice and to find Hoang guilty beyond a reasonable doubt of cruelty to children.[15]
2. Hoang contends that the evidence was insufficient to sustain a conviction for contributing to the deprivation of a minor. A *818 person commits the offense of contributing to the deprivation of a minor when that person "willfully fails to act when such act or omission would cause a minor to be found to be a deprived child as such is defined in Code Section 15-11-2...."[16] A "deprived child," for the purpose of this case, is one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals."[17]
The indictment charged that Hoang wilfully failed to seek medical treatment for B.D. after he sustained a serious head injury while in her care. Hoang argues that there is no evidence that B.D. sustained the head injury while in her care. In support of this argument, she asserts that the jury's rejection of such a finding was shown by its not guilty verdicts on Counts 1, 2, and 3.[18] This argument is without merit. As stated in Division 1, consistency in the verdict is not necessary, and every count of an indictment is regarded as if it is a separate indictment.[19] Hoang next argues that there is no evidence that she knew about B.D.'s injuries and that, with such knowledge, wilfully failed to seek medical treatment for him. But the State presented evidence that B.D. would have exhibited signs of severe injury immediately upon receiving it and that the signs would have been apparent to a layperson. There is also evidence that the injury would have rendered B.D. immediately unconscious and that he would not have regained consciousness. The jury was authorized to conclude that the injury occurred while B.D. was in Hoang's care and with her knowledge.
Finally, Hoang points to what she claims are weaknesses or inconsistencies in the circumstantial evidence that B.D. sustained a serious head injury while in her care and argues that the evidence did not exclude every other reasonable hypothesis that someone else inflicted the child's injuries.[20] To warrant a conviction on circumstantial evidence, such circumstantial evidence need not exclude every possible hypothesis other than the defendant's guilt, but only reasonable hypotheses.[21] Whether a hypothesis is reasonable is a question for the jury, and we will not disturb that finding unless the guilty verdict is insupportable as a matter of law.[22] Viewed in the light most favorable to the verdict, the jury was authorized to find, after weighing the different theories presented, that every reasonable hypothesis except Hoang's guilt was excluded. This finding is not insupportable. Consequently, the circumstantial evidence was sufficient under the standard of Jackson v. Virginia to authorize the jury's verdict that Hoang was guilty beyond a reasonable doubt of contributing to the deprivation of a minor.[23]
3. Hoang contends that the jury charge inadequately instructed the jury on malice as required for a conviction of cruelty to children. She claims that the evidence authorized the jury to find that her failure to seek medical treatment was not malicious but rather a negligent mistake in judgment. Relying on Brewton v. State,[24] she urges that the trial court erred in refusing to give her requested instruction that the "crime of cruelty to children by the failure to provide medical care may not be based on the guardian's negligent mistake in judgment as to when medical care is required, but must be based on the malicious failure to provide that care."
In Brewton, our Supreme Court considered whether evidence of unsanitary living conditions, by itself, could satisfy the *819 malice requirement of OCGA § 16-5-70(b).[25] In answering that inquiry, the Court posed a hypothetical where the parent is ignorant of the fundamentals of both housekeeping and parenting. The Court stated that malice under those circumstances is not shown because the parent is not aware of the likelihood of the ill effects from maintaining unsanitary conditions.[26] The Court then quoted from a concurring opinion in another case, in which Justice Sears wrote that "to constitute the crime of cruelty to children the failure to provide medical care may not be based on a parent's or guardian's negligent mistake in judgment as to when medical care is required, but must be based on the malicious failure to provide that care."[27]
But Hoang's reliance on Brewton is misplaced. Contrary to Hoang's contention, the evidence did not show that she mistakenly judged whether or when B.D. needed medical care. As we determined in Division 1, the evidence showed that, if not before, almost immediately after giving B.D. the lemon juice, she realized that he required medical care and also realized the ill effects of his not receiving it. Considering the parents' request to be notified first and that her son would be unable to enter the home had she left with B.D., she made a deliberate decision not to seek medical care. There was no evidence of a mistake in judgment that medical care was required. "If any portion of a requested charge is inapt, incorrect, misleading, confusing, not adequately adjusted or tailored, or not reasonably raised or authorized by the evidence, denial of the charge request is proper."[28]
Moreover, "[a] requested charge needs to be given only where it embraces a correct and complete principle of law adjusted to the facts and which is not otherwise included in the general instructions given."[29] Here, the trial court properly charged on the crime of cruelty to children, tracking the statutory definition.[30] And the court properly charged on the malice element for the offense of cruelty to children: "Malice imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and willful doing of an act with an awareness of a plain and strong likelihood that such harm may result." We find that this charge accurately conveyed to the jury the concept of malice and did not relieve the State of its burden of proving all elements of the crime of cruelty to children. Considering the evidence in this case and the jury charge given as a whole, it was not error to refuse to further instruct the jury as Hoang requested.
Judgment affirmed.
SMITH, P.J., and BARNES, J., concur.
NOTES
[1] The grand jury charged Hoang with felony murder by causing B.D.'s death by fracturing his skull (Count 1), and by failing to seek medical treatment after B.D. had sustained a serious head injury while in her care (Count 3).
[2] The grand jury charged Hoang with two counts of cruelty to children for unlawfully and maliciously causing B.D. excessive physical pain by fracturing his skull (Count 2), and by failing to seek medical treatment after the child had sustained a serious head injury (Count 4).
[3] The grand jury charged Hoang with contributing to the deprivation of a minor for wilfully failing to seek medical treatment for B.D. after the child had sustained a serious head injury while in her care, leaving the child without proper parental care necessary for his physical health and resulting in the death of the child (Count 5).
[4] Wolf v. State, 246 Ga.App. 616, 617(1), 540 S.E.2d 707 (2000).
[5] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[6] Wolf, supra, 246 Ga.App. at 617, 540 S.E.2d 707.
[7] According to B.D.'s father, on the morning of March 17, 1999, B.D. fell 17 inches from his bed to the carpeted floor.
[8] B.D.'s father testified that as he was hurriedly putting B.D. into the car to go to the doctor's office, he "banged" B.D.'s head on the door's frame, but "not very hard."
[9] (Citations and punctuation omitted.) Brewton v. State, 266 Ga. 160, 161(2), 465 S.E.2d 668 (1996); Wolf, supra, 246 Ga.App. at 618(2), 540 S.E.2d 707.
[10] Sanders v. State, 245 Ga.App. 561, 564(2), 538 S.E.2d 470 (2000).
[11] Id.
[12] Barry v. State, 214 Ga.App. 418, 420-421(3), 448 S.E.2d 243 (1994).
[13] See Wolf, supra, 246 Ga.App. at 618(1), 540 S.E.2d 707; see also Hill v. State, 243 Ga.App. 614, 616, 533 S.E.2d 779 (2000).
[14] See Wolf, supra, 246 Ga.App. at 618(2), 540 S.E.2d 707; see also Hill, 243 Ga.App. at 616, 533 S.E.2d 779.
[15] Jackson, supra, 443 U.S. 307, 99 S.Ct. 2781; see Wolf, supra, 246 Ga.App. at 618(2), 540 S.E.2d 707.
[16] OCGA § 16-12-1(b)(3).
[17] OCGA § 15-11-2(8)(A).
[18] See footnotes 1 and 2, supra.
[19] Sanders, supra, 245 Ga.App. at 564(2), 538 S.E.2d 470.
[20] See OCGA § 24-4-6.
[21] OCGA § 24-4-6; Robbins v. State, 269 Ga. 500, 501(1), 499 S.E.2d 323 (1998).
[22] Robbins, supra, 269 Ga. at 501(1), 499 S.E.2d 323.
[23] Jackson, supra, 443 U.S. 307, 99 S.Ct. 2781.
[24] Supra, 266 Ga. at 161(2), 465 S.E.2d 668.
[25] Id.
[26] Id.
[27] (Emphasis in original.) Woodbury v. State, 264 Ga. 31, 33, 440 S.E.2d 461 (1994)(Sears-Collins, J., concurring).
[28] (Citations and punctuation omitted.) Diaz v. State, 239 Ga.App. 795, 796(2), 522 S.E.2d 242 (1999).
[29] (Citation and punctuation omitted.) Holmes v. State, 210 Ga.App. 118, 119(2), 435 S.E.2d 492 (1993).
[30] See OCGA § 16-5-70(b); see also Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1991), p. 97.