**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 1, 2024**

# In the Court of Appeals of Georgia

A24A0534. TAMAYO v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, Pedro Tamayo was convicted of one count of aggravated battery and two counts of cruelty to children in the first degree. He appeals the denial of his motion for new trial.

Tamayo argues that the trial court erred by denying a general demurrer to one of the cruelty-to-children counts of the indictment because the indictment charged him with failing to seek medical care for the victim, but he had no duty to seek medical care. He also argues that the cruelty-to-children statute is unconstitutional and that the evidence does not support the conviction entered on that count. Tamayo argues

that trial counsel performed deficiently in two respects: he failed to timely challenge the cruelty-to children count based on his failure to seek medical care; and he did not object to a jury instruction. Finally, Tamayo argues that the trial court should have merged his aggravated battery conviction into one of the cruelty-to-children convictions. We hold that most of Tamayo's arguments are not properly before us; that the evidence supports the conviction that he challenges; and that his aggravated battery conviction does not merge with a cruelty-to-children conviction. So we affirm.

1. *Trial evidence*

Viewing "all of the evidence presented at trial in the light most favorable to the verdicts," *Clark v. State*, 315 Ga. 423, 427 (2) (883 SE2d 317) (2023), the trial evidence showed that Tamayo's girlfriend and her three children lived with Tamayo. The mother's eldest child, an eight-year-old girl, cared for her younger siblings, a six-year-old girl and the two-year-old victim, when the mother and Tamayo went to work. At times, Tamayo returned from work before the mother, and he would watch the children.

Once the family began living with Tamayo, the mother noticed bruises on the victim's arms, legs, and cheeks. The victim had never had bruises like that before.

On one occasion, the mother returned from work and the victim was unconscious. Tamayo told her that the victim had fallen off the bed. The victim began vomiting, and the mother wanted to seek medical care for him, but Tamayo refused to take them because he feared being deported.

On the evening of June 20, 2018, while the mother was at work, Tamayo took the victim into the bathroom to bathe or shower him. The victim was crying unusually loudly, and then he stopped. Tamayo brought the victim out of the bathroom and handed him to the victim's sister. The victim was unconscious. When the sister removed the victim's towel to dress him, she saw that his body was cut and bruised. The sister tried to awaken the victim, but he remained unresponsive.

The mother called Tamayo to pick her up from work, and he told her that the victim was having trouble breathing. Tamayo brought the victim with him to pick up the mother as she had requested. It took Tamayo 30 minutes to drive to the mother's place of work, even though they lived only two minutes away. When Tamayo pulled up, the mother saw that the victim was limp in his car seat and unresponsive. At the mother's insistence, Tamayo drove the mother and the victim to the hospital. Tamayo did not want to go because of his immigration status.

The victim was admitted to the intensive care unit. An MRI revealed a severe contusional injury to the victim's brain and evidence of both chronic and recent trauma. The MRI also showed a strain injury to the ligaments in the victim's neck. The MRI findings were consistent with abusive head trauma. There were multiple hemorrhages in all layers of both of the victim's retinas, also indicating abusive head trauma. The victim additionally suffered an anoxic brain injury, and, at one point, went into cardiac arrest and required resuscitation. The victim required an external ventricular drain to lower the pressure within his head and he required a ventilator to breathe.

The victim's face, ears, arms, abdomen, hip, legs, genital area, penis, and buttocks were bruised. He also had scabbed-over injuries and burn injuries on his legs, feet, and buttocks. Some of the injuries were in a pattern that indicated he may have been struck by the buckle of a belt. The burn injuries were consistent with cigarette burns.

The victim remained in the hospital and in inpatient rehabilitation for more than two months. Before his brain injuries, the victim met or exceeded standard

childhood milestones. Now he has cerebral palsy, which impairs his mobility; cognitive deficiencies; and dysphagia, or difficulty swallowing.

After the victim was admitted to the hospital, the mother asked Tamayo to come to the police station where she had been taken. (The mother eventually pleaded guilty to multiple counts of first-degree child cruelty, second-degree child cruelty, and aggravated assault as a party to the crime.) Tamayo texted the mother, "This what I didn't want now the police is calling me." Tamayo testified that when he learned that the police were looking for him, he went to Texas to evade arrest.

2. *Count 15*

Four of Tamayo's arguments concern Count 15 of the indictment, which alleged that Tamayo committed first-degree child cruelty under OCGA § 16-5-70 (b) in that, on or about June 20, 2018, he "did maliciously cause [the victim] cruel and excessive physical and mental pain, by failing to seek necessary and adequate medical attention for injuries the child suffered. . . ." He argues that OCGA § 16-5-70 (b) is unconstitutional; that the trial court should have granted a general demurrer on that count because he had no duty to seek medical care for the victim; that trial counsel

performed deficiently for failing to challenge that count; and that the evidence does not support his conviction on that count. He has not shown reversible error.

(a) *Constitutional challenge*

Tamayo argues that OCGA § 16-5-70 (b) is unconstitutional, but he did not raise this argument until the motion for new trial proceedings. "[A] constitutional attack on a criminal statute may not be raised for the first time on motion for new trial." *Amos v. State*, 298 Ga. 804, 807 (2) (783 SE2d 900) (2016). Instead, "[s]uch challenges must be raised at the first opportunity, and certainly before the verdicts; [Tamayo's] failure to do so waives the issues on appeal." *Robles v. State*, 277 Ga. 415, 421 (9) (589 SE2d 566) (2003).

(b) *General demurrer*

Tamayo argues that the trial court erred in failing to grant a general demurrer on this count. He has not preserved this argument.

> [G]eneral demurrers, which challenge the substance of the indictment, can be made before trial, but they are not required to be raised at that time. A challenge to the sufficiency of the substance of the indictment can be made after trial by means of a motion in arrest of judgment, or attention may be called to such a defect at any time during the trial.

*Rivera v. State*, 317 Ga. 398, 406 (1) (a) (893 SE2d 696) (2023) (citations, punctuation, and emphasis omitted).

Tamayo did not file a general demurrer before trial nor did he raise the issue during the trial. And although he did not file a separate motion in arrest of judgment, in his amended motion for new trial he sought "to arrest and set aside the judgment" on this count. Assuming this amounted to a motion in arrest of judgment, the motion was untimely. "The law is clear that a defendant must file a motion in arrest of judgment during the term in which the judgment was entered. See OCGA § 17-9-61 (b) ('A motion in arrest of judgment must be made during the term at which the judgment was obtained.')." *Ware v. State*, 313 Ga. 324, 325 (869 SE2d 479) (2022).

Tamayo's judgment of conviction was entered August 25, 2022. His amended motion for new trial in which he sought to arrest the judgment was filed on July 24, 2023, well after the term of court in which the judgment of conviction was entered. See OCGA § 15-6-3 (11) (providing that Cobb County has six terms of court per year, commencing on the second Monday in January, March, May, July, September, and November). Tamayo has failed to show that the trial court erred.

(c) *Counsel's failure to file a timely general demurrer or motion in arrest of judgment*

Tamayo argues that he was denied the effective assistance of trial counsel because trial counsel failed to file a timely general demurrer or motion in arrest of judgment as to Count 15. We hold that Tamayo has failed to show deficient performance.

> To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms.

*Moss v. State*, 311 Ga. 123, 126 (2) (856 SE2d 280) (2021) (citations and punctuation omitted). Because Tamayo's argument regarding Count 15 is novel, as he acknowledges in his reply brief, he "cannot show that trial counsel's failure to file a demurrer [or a timely motion in arrest of judgment raising this issue] amounted to deficient performance." Id. at 129-130 (2) (b). See also *Griffin v. State*, 309 Ga. 516, 520 (2) (847 SE2d 168) (2020) (where our courts "have not yet squarely decided" an

issue, "trial counsel's failure to raise a novel legal argument does not constitute ineffective assistance of counsel.") (citation and punctuation omitted); *Rhoden v. State*, 303 Ga. 482, 486 (2) (a) (813 SE2d 375) (2018) ("[T]here is no requirement for an attorney to prognosticate future law in order to render effective representation. Counsel is not obligated to argue beyond existing precedent.") (citations and punctuation omitted).

(d) *Sufficiency of the evidence to support Count 15*

Tamayo argues that the evidence does not support his conviction on Count 15 because he did not have a duty to seek medical attention for the victim. We hold that the evidence supports the conviction.

We note at the outset that our law provides explicitly that an omission to act can be a crime. OCGA § 16-2-1 (a) provides, "A 'crime' is a violation of a statute of this state in which there is a joint operation of an act *or omission to act* and intention or criminal negligence." (Emphasis added.)

More particularly, the cruelty-to-children statute, OCGA § 16-5-70, sets out two ways that the offense of cruelty to children in the first degree can be committed. Count 15 tracks subsection (b), which provides, "*Any person* commits the offense of

9

cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." (Emphasis added.) In imposing a duty on "any person," OCGA § 16-5-70 (b) differs from subsection (a) of the statute, which limits its application by the victim's relationship to the defendant. Subsection (a) applies to "[a] parent, guardian, or other person supervising the welfare of or having immediate charge or custody of a child."

So subsection (a) limits its application by the victim's relationship to the defendant. On the other hand, subsection (b), under which Tamayo has been convicted, limits its application by the intent required of the defendant: to be convicted under subsection (b), the defendant must have "maliciously" caused the child cruel or excessive pain.

> [T]he statute, [which applies to "any person,"] requires only that the defendant commit an act with malice and, in so doing, cause a child the requisite pain. Regarding the intent component, we have stated that it must be established that the mental state of the defendant has the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm, or [that] there is the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result.

10

*Oliphant v. State*, 295 Ga. 597, 600 (1) (759 SE2d 821) (2014) (citation and punctuation omitted).

And such intent may be shown by delaying medical attention: "Malice, as an element of the crime of cruelty to children, can be shown by intentionally and unjustifiably delaying necessary medical attention for a child, as that delay may cause the child to suffer from cruel and excessive physical pain." *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006)."What is cruel and unreasonable treatment of a child is primarily a question for a jury." *Murray v. State*, 135 Ga. App. 264 (1) (217 SE2d 293) (1975) (citation and punctuation omitted).

The evidence described above was sufficient to authorize a rational trier of fact to find Tamayo guilty beyond a reasonable doubt of first-degree cruelty to children as alleged in Count 15. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See *Wells v. State*, 309 Ga. App. 661, 663-664 (2) (a) (710 SE2d 860) (2011) (affirming first-degree child cruelty conviction of mother's boyfriend, who failed to seek immediate medical attention for burned child); *Hoang v. State*, 250 Ga. App. 403, 406-408 (1) (551 SE2d 813) (2001) (affirming babysitter's conviction for first-degree child cruelty by unlawfully and maliciously causing child excessive pain by failing to

seek medical treatment after the child had sustained a serious head injury, even though babysitter testified that parents had instructed her to call them first if anything happened to their child). See also *Headspeth v. State*, 265 Ga. App. 288, 290 (4) (593 SE2d 742) (2004) ("unlike OCGA § 16-5-70 (a)[, OCGA § 16-5-70 (b)] does not require that the perpetrator be a parent or guardian of the child") (punctuation omitted).

3. *Counsel's failure to object to a jury charge*

Tamayo argues that trial counsel performed deficiently by failing to object to the jury charge that "[t]he dates recited in the indictment are not material elements." This argument is waived because Tamayo

> did not raise this particular claim of ineffectiveness in his initial motion for new trial or the amendments made thereto by appellate counsel. He did not raise such a claim in the hearing on the motion. . . . The trial court did not address in its order denying the motion for new trial a claim that counsel was ineffective for failing to [object to the jury charge. Tamayo] therefore forfeited any such claim.

*Allen v. State*, 317 Ga. 1, 12-13 (4) (e) (890 SE2d 700) (2023) (citations and punctuation omitted).

4. *Merger*

12

Tamayo argues that two of his convictions merge. We disagree.

Count 3 charged Tamayo with aggravated battery in that he "maliciously cause[d] bodily harm to [the victim] by seriously disfiguring the child's head. . . ." Count 4 charged him with first-degree child cruelty in that he "maliciously cause[d the victim], a child under the age of eighteen (18) cruel and excessive physical and mental pain by inflicting blunt force to the child's head . . . ."

> Cruelty to children, but not aggravated battery, requires proof that the victim was a child under the age of 18 who was caused cruel or excessive physical or mental pain. OCGA § 16-5-70 (b). Aggravated battery, but not cruelty to children, requires proof that the victim was deprived of a member of his body . . . or that such member was rendered useless or seriously disfigured. OCGA § 16-5-24 (a). Therefore, each crime requires proof of at least one additional element which the other does not. Furthermore, the two crimes are not so closely related that multiple convictions are prohibited under other provisions of OCGA §§ 16-1-6 and 16-1-7. Accordingly, even if the "same conduct" establishes the commission of both aggravated battery and cruelty to children, the two crimes do not merge. . . .

*Waits v. State*, 282 Ga. 1, 4-5 (2) (644 SE2d 127) (2007) (citations omitted), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23 (838 SE2d 808) (2020). Accord *McFadden v. State*, 354 Ga. App. 377, 384-385 (3) (841 SE2d 18) (2020).

Tamayo cites *Regent v. State*, 299 Ga. 172 (787 SE2d 217) (2016), in which our Supreme Court held that even if two crimes do not merge under the required evidence test applicable under OCGA § 16-1-6 (1), merger still may be required under other statutory definitions of included offenses, including OCGA § 16-1-6 (2). That statute provides that one crime is included in another if that crime differs from the other "only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission." *Regent*, 299 Ga. at 175 (citation and punctuation omitted). See also OCGA § 16-1-7.

But in *Waits*, our Supreme Court expressly held that cruelty to children and aggravated battery not only do not merge under the required evidence test of OCGA § 16-1-6 (a) but also "are not so closely related that multiple convictions are prohibited under other provisions of OCGA §§ 16-1-6 and 16-1-7." *Waits*, 282 Ga. at 5 (2). So the trial court did not err by failing to merge the convictions on Count 3 and Count 4.

*Judgment affirmed. Mercier, C. J., and Rickman, J., concur.*