## S01A1504. WIGFALL v. THE STATE.
(558 SE2d 389)

HINES, Justice.

Lakeysa Lashawn Wigfall was convicted of malice murder in connection with the death of Alvin Bettis. She appeals, contending the evidence was insufficient to support the verdict and that she did not receive effective assistance of counsel. For the reasons that follow, we affirm.[1]

Construed to support the verdict, the evidence showed that Bettis, who appeared to be intoxicated, approached two women standing outside a house in the evening. He asked one of the women for a kiss and she refused. The women went inside the house, and Bettis followed to use the bathroom. He then approached a group of four people playing cards inside the home; the group included Wigfall and her mother. Bettis made unwelcome sexual advances towards Wigfall's mother and, after being asked to leave, refused. Wigfall forced Bettis out of the house and Bettis removed a screen from the kitchen window and cursed Wigfall. Wigfall opened the door and was hit in the face with a metal chair. Wigfall then took a pistol from her purse, went outside, and shot at Bettis as he was walking away.

Bettis died of a single gunshot wound to the head, fired from some distance greater than 18 inches. Before being placed in custody, Wigfall stated that she shot Bettis because he had beaten her. She also told the police that she shot Bettis and "would do it again."

1. Wigfall contends that the evidence was insufficient to autho-

---

[1] The crime occurred on January 11, 2000. A Washington County grand jury indicted Wigfall for malice murder on June 19, 2000. She was tried before a jury September 11-12, 2000, and found guilty. On September 12, 2000, she was sentenced to life in prison. On October 3, 2000, Wigfall's trial counsel moved for a new trial; on that same day appellate counsel entered an appearance and also moved for a new trial. On October 26, 2000, upon motion by trial counsel, the motion for new trial filed by trial counsel was dismissed. The court held a hearing on appellate counsel's motion for new trial on May 17, 2001, and denied the motion on June 11, 2001. Wigfall filed a notice of appeal on June 20, 2001, the case was docketed in this Court on July 11, 2001, and submitted for decision on September 4, 2001.

rize the jury to find her guilty of malice murder and that the evidence supported, at most, a conviction for voluntary manslaughter.

> A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

OCGA § 16-5-2 (a). "Whether provocation is sufficient to excite a sudden, violent and irresistible passion as to reduce the offense from murder to manslaughter is a question for the jury. *Anderson v. State*, 248 Ga. 682, 683 (3) (285 SE2d 533) (1982)." *Roseborough v. State*, 270 Ga. 143, 145 (508 SE2d 656) (1998).

The court charged the jury on malice and felony murder, voluntary manslaughter, justification, and intent. The evidence showed that when shot, Bettis was outside the home, and that after being struck by the chair, Wigfall took her pistol, went outside the door, and shot twice at Bettis. The jury was authorized to return a verdict of guilty as to malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Somchith v. State*, 272 Ga. 261, 262 (1) (527 SE2d 546) (2000); *Wooten v. State*, 270 Ga. 425 (510 SE2d 813) (1999).

2. Wigfall also contends that she did not receive effective assistance of counsel. Wigfall must show that her attorney's performance was deficient and that the deficiency prejudiced her such that a reasonable probability exists that, but for counsel's errors, the outcome at trial would have been different. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Whether counsel's performance was reasonable is judged by the circumstances counsel confronted at trial, without resorting to hindsight. *Turpin v. Lipham*, 270 Ga. 208, 210 (3) (510 SE2d 32) (1998).

Wigfall specifically complains of counsel's failure to interview the police witnesses before trial, contending that had counsel done so, counsel would have known before trial that Wigfall stated to the officers at the scene that she had shot Bettis and would do so again. Counsel testified that she did not interview the officers because

Wigfall wished to pursue a justification defense,[2] Wigfall was therefore admitting the shooting, and the question at trial would be why she shot Bettis; the defense would rely on the testimony of the witnesses present at the time of the shooting. Consequently, the court correctly concluded that this strategic decision was not unreasonable. Further, Wigfall fails to show that she was prejudiced by counsel's failure to interview these witnesses; Wigfall's statement that she shot Bettis and would do so again was consistent with the chosen defense that she was justified in shooting him. Wigfall also fails to show how counsel's failure to cross-examine the officers about the statement, or to ask Wigfall about it when she testified, prejudiced her.

Wigfall's next complaint is that her counsel did not cross-examine the expert medical witness about what the entry and exit wounds showed concerning the possible positions of the shooter and the victim. Although the State explored with the witness the possibility that Bettis was turning to flee, the last testimony of the witness on direct examination was that it was not possible to tell from the physical evidence what the positions of the shooter and victim were, and there is therefore no prejudice arising from the lack of cross-examination. Wigfall contends that the State then used this witness's testimony in its closing argument to point out to the jury that the evidence was consistent with Bettis fleeing, and further contends that her counsel should have made the opposite point in closing. However, as Wigfall had put in evidence, the State had the right to make first and last closing arguments, and waived its first closing argument. Thus, the State had not yet made this argument when Wigfall's counsel gave her closing argument, and Wigfall fails to show that counsel's closing argument, which centered on Bettis's behavior and on Wigfall's state of mind, was unreasonable, especially as the expert testimony as to the relative positions of Wigfall and Bettis was that it was not possible to determine what such positions were.

Finally, defense witness Brooks testified on cross-examination that when Wigfall shot Bettis, Bettis was retreating, and Wigfall contends that counsel should have asked Brooks further questions on redirect so as to rebut this testimony. Although counsel testified at the hearing on the motion for new trial that she had interviewed Brooks and his testimony on cross-examination was a surprise to her, Wigfall fails to show that prejudice arose from any failure to conduct a redirect examination of Brooks; Brooks was not called to testify at the hearing on the motion for new trial, and there is no evidence in

---

[2] Wigfall refused a pre-trial offer to plead guilty to voluntary manslaughter, and refused it again while the jury was deliberating.

the record as to whether redirect examination would have resulted in his recanting the testimony that Bettis was retreating, or whether Brooks would have repeated that testimony.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 14, 2002.

*Thomas J. O'Donnell, Jr.,* for appellant.

*W. Steven Askew, District Attorney, Samuel H. Altman, Assistant District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General,* for appellee.