S04A1138. SIMS v. THE STATE.
(604 SE2d 799)

HINES, Justice.

Renardo Antonio Sims appeals from his convictions of malice murder, aggravated assault, and concealing the death of another person, all in connection with the death of Sewrana Yosief.[1] For the reasons that follow, we affirm in part and vacate in part.

Construed to support the verdicts, the evidence showed that Yosief and Sims had an intermittent sexual relationship. Sims resided with family members in a house across the street from a house in which his friend Charles Webb resided with Gregory Hann. Late in the evening of September 13, 2000, Webb and Hann were at Sims's residence. Sims called Yosief who agreed to meet him. Sims did not have a car, and Webb drove Sims and Hann to Yosief's house. The men drove with Yosief back to Sims's home; on the way, the four of them smoked marijuana. Sims and Yosief went into Sims's home and engaged in sexual relations; Webb and Hann went to Webb's home, played cards, and drank alcohol. In the early morning hours on

---

[1] Yosief was killed on September 14, 2000. On December 4, 2000, a DeKalb County grand jury indicted Sims for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and concealing the death of another person. Sims was tried before a jury October 30-November 5, 2001, and was found guilty of all charges. On November 6, 2001, Sims was sentenced to life in prison for malice murder; a term of twenty years in prison for aggravated assault, to be served consecutively to the life term; and a term of ten years in prison for concealing the death of another person, to be served consecutively to the life term; the court also declared that both the felony murder charge and the aggravated assault charge merged with the malice murder. Sims moved for a new trial on December 4, 2001, and amended the motion on June 20, 2003, and amended it again on June 24, 2003; the amended motion was denied on January 20, 2004. Sims filed a notice of appeal on February 12, 2004. His appeal was docketed in this Court on March 16, 2004, and submitted for decision on May 10, 2004.

September 14, 2000, Sims telephoned Webb and asked him to come over. He and Hann did so, and found Yosief's dead body. Sims told them that she had become angry and he had choked her; he asked for their help in disposing of her body. While Webb got his car, Hann helped Sims place the body in a blanket, and the three drove to the vacant lot where Sims doused the body with gasoline and set it ablaze.

On September 18, 2000, Yosief's burned body was found in a vacant lot used as a dumping ground located near Sims's home. Her sister told police that Yosief left the house with Sims and the other men on September 13, 2000, which was the last time she saw her. The men were questioned by police. Initially, all three stated that they had been with the victim on the night of September 13-14, 2000, but that early the next morning, she walked away from them on foot, and they had not seen her since. After further questioning, and without an opportunity to consult with one another, Hann and Webb changed their stories and stated that: all three men picked up the victim on the night of September 13, 2000; Webb and Hann left her alone with Sims during the early morning hours; Webb received a telephone call from Sims asking him to come over to his house; Sims told them he choked Yosief to death and asked for their help in disposing of the body; the three took the body to the dumping ground and ignited it; the next day they went to Sims's house to clean the scene; there was a bloodstain on the carpet and Sims cut his finger with a steak knife and poured his blood over the bloodstain;[2] at Sims's request, the three concocted the story they originally told police.

Webb and Hann each testified against Sims at his trial.

1. Sims contends that there was insufficient evidence to convict him of the charges in the indictment. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Specifically, he asserts that the evidence against him was completely circumstantial and did not exclude every reasonable hypothesis save that of his guilt. See OCGA § 24-4-6. Sims contends that the evidence equally supported the hypothesis that Webb and Hann committed the murder. He also points to what he contends are inconsistencies in the testimony, and argues that these inconsistencies create a situation in which the hypothesis of his guilt could not, beyond a reasonable doubt, be accepted.[3]

---

[2] When police officers examined all three men, they found a cut consistent with a steak knife on Sims's finger.

[3] These inconsistencies include that: Webb and Hann differed regarding the time of telephone calls to and from Sims the night of Yosief's death; Webb related the detail that Sims told them Yosief had spoken in her native language while the two were struggling, but that Hann did not mention that detail; Webb "contradicted" himself when he testified how Sims set Yosief's body on fire, and described the result as "like a big bonfire," whereas he had told police

Even accepting Sims's characterization of the testimony as inconsistent, "[i]t is the jury's role to resolve conflicts in the evidence and determine the credibility of witnesses." *Watkins v. State*, 273 Ga. 307, 309 (1) (540 SE2d 199) (2001). Resolution of such conflicts does not render the evidence insufficient.

> [Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).[4]

The evidence authorized the jury to conclude that Sims was guilty of the crimes of which he was convicted. *Jackson*, supra.

2. Sims was sentenced for both malice murder and aggravated assault. Although there is no merger of the two crimes as a matter of law, aggravated assault may merge into malice murder as a matter of fact. See *Malcolm v. State*, 263 Ga. 369, 372-374 (5) (434 SE2d 479) (1993). Review of the record shows that the evidence used to prove that Sims committed aggravated assault is the same as that used to prove he committed malice murder. Therefore, the aggravated assault merged into the malice murder as a matter of fact, and the separate judgment of conviction and sentence for aggravated assault must be vacated. See *Fitzpatrick v. State*, 268 Ga. 423, 424 (1) (489 SE2d 840) (1997).

3. Sims asserts that trial counsel was ineffective in several regards.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (1) (325 SE2d 362) (1985). The criminal defendant must overcome the strong presumption that trial

---

that "I didn't look; I didn't even want to look"; and the medical examiner opined that Yosief had been strangled with a piece of cloth, while Hann and Webb implied that Sims told them he had strangled her with his hands.

[4] The jury was properly charged on circumstantial evidence.

counsel's conduct falls within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999).

*Robinson v. State*, 277 Ga. 75-76 (586 SE2d 313) (2003).[5] The trial court did not err in concluding that Sims failed to show ineffective assistance of counsel on any of the bases asserted.

(a) Counsel had in his possession telephone records showing the traffic of telephone calls to and from the residences of Webb and Sims before, during, and after the time the crimes were committed. Sims urges that counsel's failure to use the telephone records to impeach the testimony of Webb and Hann was ineffective.[6]

At the hearing on the motion for new trial, counsel testified that he had not used the telephone records to impeach Webb and Hann because certain of the records showed calls from Sims's residence to Webb's residence that were inconsistent with the version of events that Sims had related to counsel, and that counsel therefore did not want the records put before the jury, in case Sims decided to testify.[7] "The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case." *Nhek v. State*, 271 Ga. 245, 247 (3) (517 SE2d 521) (1999). "The fact that present counsel would pursue a different strategy does not render trial counsel's strategy unreasonable. [Cit.]" Id. at 248 (3). The records, in fact, are consistent with the gist of the testimony of Webb and Hann, essentially creating inconsistencies only in details of time, and do not show any inconsistency not present in a comparison of the two men's testimony.

(b) Counsel did not call any witnesses in Sims's defense, and Sims contends that failing to do so was ineffective. Two of the witnesses Sims now contends should have been called were Sims's brother and sister, who were present in the house when Yosief was killed, and heard nothing. Sims urges that this testimony would shed doubt on

---

[5] Sims contends that he need not satisfy the portion of this test that requires him to demonstrate that there is a reasonable likelihood that the outcome of the trial would have been different because there was a total lack of trial preparation in this case such that ineffectiveness was "so pervasive that a particularized inquiry into prejudice would be unguided speculation." (Citations and punctuation omitted.) *Ross v. Kemp*, 260 Ga. 312, 315 (393 SE2d 244) (1990). However, the record belies the contention that there was a lack of trial preparation.

[6] Before trial, Sims's counsel moved for a continuance on the ground that the telephone records were in the State's possession but not produced to him until six days before trial rather than the ten days mandated by OCGA § 17-16-4 (a) (3). The continuance was denied. Counsel's own statement in the written motion for a continuance that, without the continuance, his representation would be ineffective, does not equate to a finding that he was, in fact, ineffective at trial. See *Hinely v. State*, 275 Ga. 777, 782-783 (2) (f) (573 SE2d 66) (2002).

[7] Sims's decision not to testify was not made until the close of the State's case. See Division 3 (d), infra.

the truth of Webb's testimony that Sims stated that Yosief had screamed before her death. Sims also contends that his sister would have testified that Sims cut his hand while attempting to repair a broken vacuum cleaner, when he was vacuuming the living room at her insistence.

Counsel testified that he did not believe these potential witnesses would help Sims's case, and that he wished to preserve the right to opening and concluding argument. Such right is valuable, and preserving it is a reasonable strategy. *Dewberry v. State*, 271 Ga. 624, 625 (2) (523 SE2d 26) (1999). These witnesses were close relatives of Sims, whose testimony could be suspect, and counsel was not unreasonable in determining that whatever benefit might accrue to Sims's defense by presenting them did not outweigh the value of preserving the right to opening and concluding argument.

(c) Sims also asserts that counsel should have called Sims's mother to testify. Counsel testified that Sims's mother informed him that she would testify that, after Sims was charged in the killing of Yosief, Webb and Hann were riding in her car and informed her that they had killed Yosief and had told false versions of the event to the police so as to frame Sims for the murder. At the hearing on the motion for new trial, counsel testified that he felt he had a duty not to present testimony that he believed was perjured. Counsel is correct: "[t]rial counsel is precluded from assisting his client in presenting perjured testimony." *Nicholson v. State*, 265 Ga. 711, 715 (4) (462 SE2d 144) (1995). Further, counsel testified that in any event, he did not believe that such testimony would be credible, as it required the listener to believe that Webb and Hann went to some effort to concoct a story inculpating Sims, and then informed Sims's mother that they had committed the murder and were framing Sims for the crime.[8]

(d) Sims did not testify at trial. He contends that counsel was ineffective in not advising him "in any meaningful way" about his decision of whether to testify. At the hearing on the motion for new trial, counsel testified that he discussed with Sims the right to testify, and that he advised Sims against doing so. Counsel gave that advice because the State had not introduced all of Sims's statements at trial, and in a taped statement that was not introduced, Sims spoke disparagingly and in a vulgar manner about the victim; counsel

---

[8] Additionally, prejudice to Sims's case was not shown; at the hearing on the motion for new trial, the mother testified that Hann had said that he knew Yosief was dead. This was consistent with the State's evidence that Hann and Webb had helped Sims dispose of Yosief's body. She did not testify that he told her that he and Webb killed Yosief, or that she was told they had fabricated a story to inculpate Sims.

believed that if Sims testified, this statement would probably be introduced for impeachment and would prejudice Sims in the eyes of the jury.

At trial, after the close of the State's case in chief, and after Sims's counsel stated that the defense rested, the court advised Sims about his right to testify and questioned him about his decision not to do so. At that time, Sims stated that he understood his right, had discussed the matter with counsel, and decided not to testify, affirmatively stating: "[I]t's my decision."

Sims fails to show any error. Not only did counsel's testimony support the trial court's ruling on the motion for new trial, but Sims did not produce evidence as to what he should have known at the time of his decision that he did not, nor how that information would have altered his decision. And in any event, he has not shown that there is any likelihood that the outcome of the trial would have been different. At the hearing on the motion for new trial, Sims testified that counsel advised against his testifying, but he did not present any evidence as to what the content of his testimony would have been had he testified at trial. See *Wigfall v. State*, 274 Ga. 672, 674-675 (2) (558 SE2d 389) (2002).

*Judgments affirmed in part and vacated in part. All the Justices concur.*

DECIDED NOVEMBER 8, 2004.

*Bruce S. Harvey, Jennifer S. Hanson, David W. Martin*, for appellant.

*Jeffrey H. Brickman, District Attorney, Robert M. Coker, Sheila A. Connors, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.