S05A1559. FORTSON v. THE STATE.
(628 SE2d 104)

HINES, Justice.

Tracy Lea Fortson appeals her convictions for malice murder and attempted arson in connection with the death of Douglas Benton. For the reasons that follow, we affirm.[1]

1. Fortson contends that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of her guilt. See OCGA § 24-4-6.

[Q]uestions as to the reasonableness of hypotheses are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law. [Cit.]

---

[1] Benton was killed on or about June 4, 2000. On October 18, 2000, a Madison County grand jury indicted Fortson for malice murder, felony murder while in the commission of aggravated assault by shooting Benton, aggravated assault by shooting Benton, aggravated assault by stabbing Benton, and attempted arson. Fortson was found guilty of all charges, but her convictions were reversed in *Fortson v. State,* 277 Ga. 164 (587 SE2d 39) (2003). After a change of venue, Fortson was tried before a jury in Effingham County March 22-25, 2004, and found guilty of malice murder, felony murder in the commission of aggravated assault by shooting Benton, aggravated assault by shooting Benton, and attempted arson; she was found not guilty of aggravated assault by stabbing Benton. On April 5, 2004, Fortson was sentenced to life in prison for malice murder, and a consecutive term of ten years in prison for attempted arson; the aggravated assault merged with the malice murder conviction, and the felony murder stood vacated by operation of law. See *Malcolm v. State,* 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Fortson moved for a new trial on April 20, 2004, and amended her motion on September 9, 2004. The trial court denied the motion on April 14, 2005. Fortson filed her notice of appeal on May 16, 2005; the appeal was docketed in this Court on June 19, 2005, and argued before this Court on September 7, 2005.

*Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

Construed to support the verdicts, the evidence showed that Benton and Fortson had a romantic relationship that was "rocky." Benton was last seen by his neighbors on June 4, 2000. Fortson was seen at Benton's house that same day; she and Benton had been having difficulties in their relationship in the weeks before June 4, and had a serious argument on or about that date. On June 17, 2000, Benton's neighbors became concerned about his well-being; it appeared that exotic birds that he kept at his home had not been cared for. Law enforcement officers were called, entered Benton's home to ensure that he was not inside and in need of assistance, and exited when it was determined he was not there. The officers treated Benton's disappearance as a missing person case.

On June 19, 2000, Benton's body was found on a cattle farm and game preserve in Oglethorpe County; Fortson had access to and knowledge of the farm from hunting there.[2] The body was wrapped in two shower curtains; the shower curtain from Benton's bathroom was missing, and on June 4, 2000, Fortson purchased a shower curtain. In addition to being wrapped in the shower curtains, Benton's body was encased in concrete in a horse feeding trough; the trough had been painted in a camouflage pattern and placed in an obscure location on the farm. On June 4, 2000, Fortson had also purchased a horse feeding trough and ten 80-pound bags of concrete mix.[3] Samples of paint from spray paint cans found at Fortson's residence matched the composition of the paint on the trough. Recent scar marks on trees at the site where the trough was found matched marks on Fortson's pickup truck. Concrete in the bed of her truck had the same geologic origin as that in which Benton's body was encased.

Physical evidence showed that Benton had been shot in the head while he lay on his couch. Forston possessed ammunition of the same type as the fatal bullet, and a rifle that could have fired it.[4]

Early in June 2000, Benton's vehicle was left at the residence of a friend; a note, purportedly signed by Benton, was affixed to the windshield. The handwritten note stated that Benton would be out of town for a while and asked his friend to take care of his truck; the note also asked the friend to try to hide the truck, not to try to call Benton, and "don't say anything to nobody." The friend had "really never looked" at Benton's handwriting before. An expert witness opined that the note had been written by Fortson. The note was taped to the

---

[2] Fortson had also served as an Oglethorpe County deputy sheriff.

[3] At trial, Fortson testified that the next day the trough and concrete mix were missing from her carport; she did not report them stolen to police.

[4] The bullet was too distorted to allow any definitive match.

windshield with special tape of the type used to lift latent finger-prints; Fortson had been issued such tape when she was employed as a deputy sheriff. The tape showed that it had been handled by someone wearing latex gloves, and a bloodstained fingerprint inside Benton's home also showed evidence of having been made by one wearing latex gloves. Latex gloves were found in Fortson's home.

At trial, Fortson testified that Benton had been involved in the prosecution of a drug dealer, and that she had told police officers investigating his death that fact. However, one of the investigators she named testified in rebuttal that she had not discussed with him any alleged role of Benton's in the drug dealer's prosecution. The investigator also testified that to his knowledge Benton had no role in that prosecution.

After Benton's body was found, there was an attempt to burn his house, apparently to hide evidence of the murder. On June 17, 2000, police officers first entered Benton's house. The next day, June 18, officers spoke with Fortson, and discussed the turbulent nature of her relationship with Benton. The next day, June 19, Benton's body was found, and officers again entered Benton's home, this time encountering the strong odor of kerosene and finding signs of an attempted arson; there had been no such odor two days before. The officers saw evidence that someone had attempted to clean bloodstains from the couch; the couch and adjacent carpet had been soaked with kerosene. Lit candles had been placed on the couch and carpet; the couch was the exact locale of the shooting.[5] The evidence showed that the attempted arson was inextricably linked to the murder, and the jury was authorized to find beyond a reasonable doubt that Fortson was guilty of malice murder and attempted arson, see *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and to exclude all reasonable hypotheses save that of her guilt. *Robbins*, supra.

2. Fortson objected to the admission into evidence of two hand-written documents she had penned, contending that their prejudicial impact outweighed their probative value. The documents were introduced by the State as exemplars of her writing, and it is undisputed that they formed a basis for expert testimony that Fortson was the person who wrote the note left on Benton's vehicle. One document, a written prayer, spoke of her love for Benton and asked for "strength to control my anger, my rage, my jealousy." The other, apparently an unaddressed note, stated "I know you like to try to figure me out, trying to see what makes me tick . . . the problem is I don't know what makes me do the things I do. . . ."

---

[5] The candles failed to ignite the kerosene.

Evidence that is relevant and material to an issue in a case is not rendered inadmissible merely because it incidentally places the defendant's character in issue. *Reed v. State*, 279 Ga. 81, 83 (3) (610 SE2d 35) (2005). This principle applies to handwriting samples as well as other types of evidence. See *Ingram v. State*, 253 Ga. 622, 637 (18) (a) (323 SE2d 801) (1984). The admission of relevant evidence that is challenged on the basis that its probative value is outweighed by its prejudicial impact is within the sound discretion of the trial court. See *Carroll v. State*, 261 Ga. 553, 554 (2) (408 SE2d 412) (1991). The authorship of the note placed on Benton's vehicle was material to the jury's determination of guilt in this case.[6] The trial court did not abuse its discretion in determining that any prejudicial impact of a religious prayer asking for strength, and an expression of uncertainty as to what "makes me tick," did not outweigh the probative value of the evidence.

3. Although originally represented by counsel in this Court, on March 9, 2006, Fortson pro se filed an untimely supplemental enumeration of error; this filing will not be considered. *Smith v. State*, 267 Ga. 372, 378 (12) (477 SE2d 827) (1996).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 27, 2006 —
RECONSIDERATION DENIED APRIL 13, 2006.

Tracy Lea Fortson, *pro se.*

*Robert W. Lavender, District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

---

[6] Fortson presented an expert witness who opined that the note found on Benton's truck was written by him, and not by Fortson.