## S06A1568. BROOKS v. THE STATE.
### (640 SE2d 280)

BENHAM, Justice.

Appellant John Levi Brooks was convicted of malice murder and kidnapping with bodily injury in connection with the death of 27-year-old Telma Morris in November 2002.[1] On appeal, he challenges the sufficiency of the evidence and the admission of certain evidence and certain testimony, and asserts he was denied the effective assistance of trial counsel. After reviewing the record in light of appellant's contentions, we affirm the judgment of conviction.

The family of Telma Morris reported her as missing on November 2, 2002, and her body was discovered the next day by police in an overgrown lot in Fulton County. The medical examiner who performed the autopsy testified the victim had died as a result of manual strangulation. Appellant had met the victim through an internet dating service a month earlier, and his cousin testified he saw the victim on November 1 at the home he shared with appellant, and that she and appellant left in the victim's car at about 4:00 p.m. The next morning, appellant called his cousin and the cousin drove appellant's car to a nearby strip mall where he met appellant who was driving the victim's car. The cousin followed appellant to a motel where appellant removed items from the victim's car, got in his own car with his cousin, and drove to a dumpster where he left the items removed from the victim's car. The victim's car was recovered from the motel parking lot on November 8. Appellant's uncle testified appellant had told him the victim was calling him too frequently and it was getting on appellant's nerves.

When the victim's family reported her missing, they included information about the victim's car. Two police officers recognized the car as one they had seen at 4:30 p.m. on November 1, parked in an abandoned area near the Atlanta airport. At that time, they had called in the license plate but before the result was available, a

---

[1] The victim was last seen alive on November 1, 2002, and her body was found two days later. On May 3, 2003, the Fulton County grand jury returned a true bill of indictment charging appellant with malice murder, felony murder (aggravated assault), aggravated assault, rape, and kidnapping with bodily injury. Appellant's trial commenced on May 12, 2003, and concluded on May 16 with the jury's return of guilty verdicts on all counts except rape, and with the trial court's imposition of concurrent sentences of life imprisonment for the convictions for malice murder and kidnapping with bodily injury (the felony murder conviction having been vacated as a matter of law and the aggravated assault conviction having merged as a matter of fact into the malice murder conviction. See *Sims v. State*, 278 Ga. 587 (2) (604 SE2d 799) (2004)). Trial counsel filed a timely motion for new trial on May 19 and was allowed to withdraw as counsel July 22, 2003. Current counsel filed a second motion for new trial and a hearing was held on October 10, 2005. The order denying the motion for new trial was filed February 20, 2006, and a timely notice of appeal was filed March 20, 2006. The appeal was docketed in this Court on May 22, 2006, and was submitted for decision on the briefs.

sweating man had emerged from the woods and claimed the car belonged to him. He was unable to produce a driver's license, but displayed a Social Security card and a City of Atlanta employee identity card in the name of Tranis Borders, and they allowed him to drive away. After being alerted to the fact the car and its owner were missing, one of the officers returned to the site where they had seen the car and found the victim's body approximately 150 feet away from where the vehicle had been parked. When presented with a photographic lineup which included appellant, both officers identified the photo of appellant as that of the man who drove off in the victim's car after coming out of the woods where the victim's body was later found.

Based on the name given to the officers, an arrest warrant was issued for Tranis Borders. Mr. Borders testified he had been the victim of an armed robbery and aggravated assault in the early morning hours of October 31, and his wallet containing his Social Security card and City of Atlanta identification card had been taken. A copy of the police incident report was admitted into evidence. He was able to give a description of his assailant's car, including a portion of the license plate number, and that description and partial license plate number matched appellant's car. Mr. Borders testified the assailant used a nickel-plated pistol to assault him and identified the gun found in a search of appellant's room as resembling that which was used by his assailant. Mr. Borders identified appellant as his assailant in a photo array and at trial.

1. Appellant maintains the circumstantial evidence presented by the State was not sufficient to authorize his conviction because the evidence did not exclude every reasonable hypothesis save that of his guilt. See OCGA § 24-4-6. Appellant relies on his testimony that he last saw the victim at his house on November 1, and questions the trustworthiness of the testimony of the witnesses who identified him as the person seen with the victim's car at the site where her body was found two days later, and as the person who stole the identity papers displayed to police by the person with the victim's car the day the victim was killed.

> [T]he correct rule for determining the sufficiency of the evidence in convictions based entirely on circumstantial evidence is that "questions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." [Cit.]

*Roper v. State*, 263 Ga. 201 (1) (429 SE2d 668) (1993). It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient. *Sims v. State*, 278 Ga. 587 (1) (604 SE2d 799) (2004). After reviewing the evidence in a light most favorable to the verdict, we conclude the evidence was sufficient to authorize the jury to determine the State excluded all reasonable hypotheses save that of the guilt of appellant, and to authorize a rational trier to find appellant guilty beyond a reasonable doubt. *Roper v. State*, supra, 263 Ga. at 202.

2. Appellant asserts harmful error resulted from the admission into evidence of the testimony of Tranis Borders concerning the aggravated assault and armed robbery that took place the day before the victim was killed, including his identification of appellant as the assailant. Appellant acknowledges trial counsel did not object to the admission of the testimony and recognizes that failure to object at trial generally constitutes a waiver of appellate review. *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992) ("Errors not raised in the trial court will not be heard on appeal."). Appellant maintains his enumerated error is entitled to appellate review under the "plain error" rule, which permits appellate review of assertions of error raised for the first time on appeal where the asserted error affects substantive rights. *Owens v. State*, 263 Ga. 99 (2) (428 SE2d 793) (1993). However, application of the plain error rule is limited to death penalty cases and criminal cases in which the trial judge, in violation of OCGA § 17-8-57, has expressed or intimated the judge's opinion as to the guilt of the accused or as to what has or has not been proved. *Paul v. State*, 272 Ga. 845 (3) (537 SE2d 58) (2000). This case fits neither situation; accordingly, the plain error rule is inapplicable to the case at bar, and appellate review of appellant's assertion of error regarding the admission of the testimony of Tranis Borders is waived due to the failure to object at trial.

3. Appellant complains reversible error was committed by the admission into evidence of the gun found in a search of appellant's room and identified by Tranis Borders as similar in appearance to the gun used by the armed robber who took from Borders the identification documents which were presented to police the next day by the man who had possession of the victim's car. Prior to the admission of the gun, the trial court informed the jury the gun was being admitted as one that looked like the weapon used to rob Borders, but there was no evidence it was the actual weapon used. Appellant asserts the gun was irrelevant to the charges for which appellant was being tried and its highly prejudicial nature should have precluded its admission into evidence.

> "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant." [Cits.] The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases.

*Crozier v. State*, 263 Ga. 866, 867 (2) (440 SE2d 635) (1994). "The admission of relevant evidence that is challenged on the basis that its probative value is outweighed by its prejudicial impact is within the sound discretion of the trial court." *Fortson v. State*, 280 Ga. 376, 379 (2) (628 SE2d 104) (2006). While no gun was used in committing the crimes for which appellant was being tried, evidence of the gun was relevant to the charges being tried because it connected appellant to the identification documents presented to police in close proximity to the victim's body by the person who had custody of the victim's car on the day the victim was killed. We see no abuse of the trial court's discretion in admitting the gun into evidence, especially since the trial court's action was accompanied by an explanatory instruction to the jury.

4. A woman who had worked with the victim for less than a year was permitted, over a hearsay objection, to testify to three statements the victim had made to her the last day she was seen alive: the victim was going to see her boyfriend that day; the victim was very excited because she had given her life back to Christ the night before; and the victim was going to go back to school to prepare for a career in photography. It appears the hearsay was admitted pursuant to the "necessity" exception found in OCGA § 24-3-1 (b) ("Hearsay evidence is admitted only in specified cases from necessity.").

> The two prerequisites for the admission of hearsay because of necessity are: a finding that the hearsay is necessary, and a finding that the declarant's hearsay statement is surrounded by particularized guarantees of trustworthiness. . . . After the completion of the three-pronged examination of whether the hearsay is "necessary," the trial court must then examine whether the hearsay statement is surrounded by "particularized guarantees of trustworthiness," that is, whether there is "something present which the law considers a substitute for the oath of the declarant and [her] cross-examination by the party against whom the hearsay is offered." [Cit.] Absent a showing of particular guarantees of trustworthiness or indicia of reliability, the proffered hearsay must be excluded from evidence.

*Williams v. State,* 277 Ga. 853, 854-855 (2) (596 SE2d 597) (2004). One in whom the declarant placed great confidence and to whom the declarant turned for help with problems may testify to a statement made to the witness by the declarant. *Myers v. State,* 275 Ga. 709, 713 (2) (572 SE2d 606) (2002). There was no evidence of such a relationship between the victim/declarant and the witness in the case at bar, and the lack of such a relationship or other particularized guarantees of trustworthiness makes the admission of the hearsay testimony erroneous. Id. However, "[t]he erroneous admission of hearsay testimony is harmless where it is cumulative of legally admissible evidence of the same fact, where it does not touch on the central issue of the case, or it could not have contributed to the verdict in light of eyewitness testimony regarding the crime." Id. The hearsay statement regarding the victim's plan to visit her boyfriend is cumulative of the testimony of appellant's cousin that he saw the victim at appellant's home that afternoon, and the statements regarding the victim's religious experience and her future scholastic plans did not touch on the central issue of the case. Accordingly, the erroneous admission of the hearsay was harmless error.

5. Appellant next contends his constitutional right to due process was violated by the admission of the results of a purportedly impermissibly suggestive pre-trial identification procedure, followed by an in-court identification of appellant as the person with the victim's car near the site where her body was found. Appellate review of the issue is waived due to failure to object at trial. *Newton v. State,* 280 Ga. App. 709, 711-712 (634 SE2d 839) (2006); *King v. State,* 269 Ga. App. 658 (2) (605 SE2d 63) (2004).

6. Finally, appellant contends he was denied his right to effective assistance of counsel because trial counsel failed to seek suppression of witnesses' identification of appellant on the ground that pre-trial identification procedures were impermissibly suggestive; failed to object to the in-court identification of appellant by one of the police officers; failed to present evidence affecting the reliability of Tranis Borders' identification of appellant as the armed robber; and solicited on cross-examination an in-court identification of appellant by a witness. "To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. [Cits.]" *Myers v. State,* supra, 275 Ga. at 713 (4). "Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance [cit.], and there is a strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. [Cit.]" *McKinney v. State,* 281 Ga. 92, 93 (2) (635 SE2d 153) (2006).

(a) "In determining whether to exclude identification evidence, the trial court must ascertain whether the identification procedure was impermissibly suggestive, and, if so, whether there was a substantial likelihood of irreparable misidentification. [Cit.]" *Fletcher v. State*, 277 Ga. 795, 797 (3) (596 SE2d 132) (2004).

The taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure. [Cit.] An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator [cit.], or . . . is the equivalent of the authorities telling the witness, "this is our suspect."

*Clark v. State*, 271 Ga. 6, 12 (7) (b) (515 SE2d 155) (1999).

Appellant complains the identification of appellant by a police officer as the man with the victim's car near the site where her body was discovered was tainted by a procedure in which the officer was shown a single photo of appellant. The officer testified he was shown an array of six photos and chose appellant's photo, describing himself as "around 65 percent sure" that the photo was that of the man he had seen. After appellant was arrested, the officer looked at appellant's booking photos, in effect a photo "show-up," and concluded he was sure they depicted the man he saw with the victim's car. Upon seeing appellant in the courtroom, the officer reiterated the confidence he had in his identification of appellant as the man with the victim's car.

A showup is "inherently suggestive." *Butler v. State*, 276 Ga. App. 161, 164 (1) (623 SE2d 132) (2005). The issue then becomes whether, under the totality of the circumstances, there was a substantial likelihood of misidentification. *Jones v. State*, 273 Ga. 213 (2) (539 SE2d 143) (2000). In the case at bar, since the showup was preceded by a photo array against which no attack has been made, we conclude trial counsel's failure to seek suppression of the identification testimony did not prejudice appellant to the point that a reasonable probability exists that, but for counsel's error, the outcome of the trial would have been different. Accordingly, trial counsel's inaction did not constitute ineffective assistance.

(b) Tranis Borders testified he saw a portion of his assailant's face when he was able to remove the assailant's stocking mask the night he was robbed, and he picked appellant's photo from a pictorial lineup three months after the incident. On cross-examination, Borders admitted the incident had occurred at 3:00 a.m. after he had been up for 20 hours and had been drinking at a nightclub. Appellant contends trial counsel was ineffective for failing to use on cross-examination the fact that Borders had told police a week after the

incident that it was too dark for him to see the perpetrator. Assuming the failure to use Borders's statement to call into question the reliability of Borders's identification of appellant as the perpetrator constitutes deficient performance, in light of the physical description of the assailant and the description of the assailant's car and a portion of its license plate given by Borders the day after the incident, as well as the other evidence connecting appellant to the victim's disappearance and death, we cannot say that trial counsel's failure to use the police report to question the reliability of Borders's identification of appellant as the armed robber prejudiced appellant to the point that a reasonable probability exists that the outcome of the trial would have been different.

(c) Trial counsel testified at the hearing on the motion for new trial that he deduced from the State's failure to elicit in-court identification testimony from an employee of the hotel at which the victim's car was found that the witness was unable to identify appellant as the man she saw. He decided to highlight this theory for the jury by asking the witness if she had ever seen appellant before. In response, the witness identified appellant as the man she saw with the victim's car. Trial counsel's solicitation of the in-court identification of appellant by the witness was a matter of trial strategy, and the trial court was authorized to conclude that counsel's strategic decision was reasonable and fell within the range of professional conduct. *Buchanan v. State*, 273 Ga. App. 174 (2) (614 SE2d 786) (2005). The trial court did not err when it concluded that appellant had not received ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 22, 2007.

*Akil K. Secret*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Peggy R. Katz, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General*, for appellee.