## A07A1271. OLIVARIA v. THE STATE.
(650 SE2d 422)

PHIPPS, Judge.

Donald Lee Olivaria appeals his convictions of sale of cocaine and giving a false name to a law enforcement officer. He contends that at his 2003 trial the court erred in instructing the jurors that, in assessing the reliability of eyewitness identification testimony, they could consider as a factor the level of certainty shown by the witness in making the identification. Before the trial of this case, *Jones v. State*[1] called into question the appropriateness of this jury charge but failed to resolve the issue because of its conclusion that the giving of the charge was harmless error there. But after this case was tried, *Brodes v. State*[2] found the giving of the charge to be harmful and disapproved its further use in Georgia. Finding this case more akin to *Jones* than *Brodes*, we find no harmful error in the giving of the charge here and, thus, affirm.

State's evidence showed that Kelly Perkins, a narcotics investigator with the Gwinnett County Drug Task Force, was working undercover to ferret out drug dealers at a Norcross motel. At about 5:00 p.m. on September 10, 2002, Perkins went to the motel and talked to two men, one of whom she later identified as Olivaria. Although Olivaria offered to sell drugs to Perkins, she rejected the offer because he wanted her to meet him at another motel to make the buy. Perkins did, however, purchase $20 worth of suspected crack cocaine from the other man, later identified as Joseph Tooson. After making that buy, Perkins left the motel; verified by field testing the substance that it was cocaine; and then returned to the motel with another investigator, Darrell Ponder, to identify Tooson and have him taken into custody by an arrest team.

After returning to the motel within about 30 minutes, Perkins and Ponder encountered Olivaria and asked about Tooson's whereabouts. He said he did not know, but again offered to sell drugs to Perkins. In exchange for a $50 bill, Olivaria shortly thereafter handed Perkins a piece of suspected crack cocaine which he took from a camera case.

Perkins and Ponder then drove across the street from the motel to a business park, field tested the substance, and verified that it too was cocaine. Within five to ten minutes after leaving the motel, they radioed a description of Olivaria to the arrest team and returned to the motel to identify him. The arrest team was unable, however, to locate Olivaria, although they detained for questioning another man

[1] 273 Ga. 213, 218-219 (3) (b) (539 SE2d 143) (2000).

[2] 279 Ga. 435 (614 SE2d 766) (2005).

found in the vicinity of the drug buy. After confirming that the man being detained was neither Olivaria nor Tooson, Perkins and Ponder decided to leave the motel. But as they were doing so, they saw Tooson and arrested him. While they were doing that, Ponder saw Olivaria walking toward the motel from a nearby restaurant. Perkins and Ponder then approached him, confirmed that he was the man who had sold the crack cocaine to Perkins, identified themselves as police officers, and arrested him for sale of cocaine after he had provided them with a false name. Neither the $50 bill that Perkins had given him nor the camera case from which he taken the cocaine was, however, found in his possession.

At trial, Perkins acknowledged that she had made "one of my biggest mistakes" in not going to the restaurant to see if Olivaria had spent the money there. Nonetheless, in support of their identification of Olivaria, Perkins and Ponder testified that his face was plainly visible to them as they were observing him at a close distance in daylight. Moreover, as investigators, they were trained to look for distinctive features. One such feature Perkins observed about Olivaria was his teeth; and she related to the arrest team that he had a "messed-up grille," meaning that something was wrong with his teeth. She also provided the arrest team with a description of Olivaria's height, weight, and the clothes he was wearing.

The trial court gave the following pattern jury instruction on the reliability of eyewitness identification evidence.

> Some, but not all, of the factors you may consider in assessing reliability of identification are: the opportunity of the witness's view of the alleged perpetrator at the time of the alleged incident; the witness's degree of attention toward the alleged perpetrator at the time of the alleged incident; *the level of certainty shown by the witness about his or about her identification*; the possibility of mistaken identity; whether the witness's identification may have been influenced by factors other than the view that the witness claimed to have had; and/or whether the witness on any prior occasion did not identify the defendant in this case as the alleged perpetrator.[3]

Defense counsel neither objected to the charge nor reserved the right to raise objections on appeal.

---

[3] (Emphasis supplied.); see Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.35.10.1 (3rd ed. 2003, updated 2006).

Through a new attorney, Olivaria moved for a new trial, claiming that his trial counsel had been ineffective in failing to object to certain evidence at sentencing. At the hearing on the motion for new trial, counsel was questioned relative to that claim only. For the first time on appeal, Olivaria contends that counsel was ineffective in failing to reserve objections to the jury charge. That claim has been waived, however, because Olivaria neither raised it in his written motion for new trial nor at the hearing on the motion. Under these circumstances, we review the charge to determine whether, under OCGA § 5-5-24 (c), there was a substantial error in it that was harmful as a matter of law.[4]

The state in *Jones* introduced eyewitness identification testimony and other evidence to support the defendant's convictions. *Jones* concluded that even if the giving of the "level of certainty" charge was error, the error was harmless based in part on the reliability of the eyewitness testimony (i.e., the eyewitnesses gave consistent descriptions of the defendant, they were not under stress when they saw him, they had good lighting by which to see him, and they identified him shortly after the crime). Moreover, the trial court had also charged the jury on the possibility of mistaken identification and other relevant factors set forth in the pattern instruction. And finally, although the eyewitness identification was important in *Jones*, there was other significant evidence of his guilt.

In *Brodes*, however, the only evidence implicating the defendant in the crime was the testimony of two victims identifying him as the perpetrator. And even though one of the witnesses had been unable to identify the defendant's picture in a photographic array and the other was unable to provide a physical description of him to police, the witnesses repeatedly testified at trial as to the certainty of their identification. The defense countered with expert testimony that there is not a good relationship between a witness's level of confidence in his identification and its accuracy. After noting the existence of well-respected and essentially unchallenged empirical studies that supported the expert's testimony, *Brodes* found the "level of certainty" portion of the pattern charge to be erroneous. Under the circumstances of that case, the Court held that giving the charge was so harmful to the defense that it could have affected the outcome of the trial. Accordingly, the defendant's convictions were reversed.

This case is more akin to *Jones* than to *Brodes*. Although the only evidence corroborating Perkins's and Ponder's identification testimony was Olivaria's presence at or near the scene, their identification of him was highly reliable under the totality of factors in the

---

[4] *Conger v. State*, 245 Ga. App. 399, 400 (2) (537 SE2d 798) (2000).

pattern instruction. Moreover, unlike in *Brodes*, one of the state's eyewitnesses (Ponder) was not even asked about the certainty of his identification, and the other eyewitness (Perkins) was asked about that only once. Under these circumstances, we do not find harmful error here in the giving of the "level of certainty" portion of the pattern instruction under the strict standard set forth in OCGA § 5-5-24 (c). Nor do we find a reasonable probability that the outcome of the trial would have been different if the charge had not been given.[5]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 30, 2007.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Niria D. Baggett, Assistant District Attorney*, for appellee.

---

[5] See generally *Brooks v. State*, 281 Ga. 514, 518 (6) (640 SE2d 280) (2007).