**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: December 20, 2022

S22A1022. TURNER v. THE STATE.

BOGGS, Chief Justice.

Appellant Willie Lewis Turner II challenges his 2017 convictions for malice murder and possession of a firearm by a convicted felon in connection with the shooting death of Travalas Acres.[1] Appellant contends that the evidence against him was not

---

[1] The crimes occurred in the early morning hours of February 19, 2016. On November 2, 2016, a Coweta County grand jury indicted Appellant for malice murder, felony murder based on possession of a firearm by a convicted felon, and possession of a firearm by a convicted felon. Appellant's initial trial in May 2017 ended in a mistrial. At a trial from October 16 to 26, 2017, the jury found him guilty on all counts. The trial court sentenced him to serve life in prison for malice murder and a consecutive term of five years for possession of a firearm by a convicted felon. Although the trial court purported to merge the felony murder verdict for the purpose of sentencing, the felony murder verdict was vacated by operation of law. See *Manner v. State*, 302 Ga. 877, 890-891 (808 SE2d 681) (2017). Appellant filed a motion for new trial on October 27, 2017, which was amended with new counsel on August 18, 2020. The trial court held an evidentiary hearing on May 11, 2021, and denied the motion on October 29, 2021. Appellant filed timely notice of appeal. The case was docketed in this Court to the August 2022 term and was submitted for a decision on the briefs.

credible and therefore was legally insufficient to support his convictions. However, when evaluating the sufficiency of the evidence to satisfy constitutional due process, we do not assess the credibility of the witnesses. When properly viewed in the light most favorable to the jury's verdicts, the evidence at trial was sufficient to support Appellant's convictions for malice murder and possession of a firearm by a convicted felon. Accordingly, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. In the early morning hours of February 19, 2016, Appellant was at an unlicensed neighborhood bar in Newnan with Acres, Jonathan Allen, and Jemelle Moss, Appellant's cousin. Acres and Allen were good friends, but neither was friends with Appellant. Nor were Allen and Moss good friends, although Allen had used cocaine that night, which he purchased from Moss. At around 12:20 a.m., the four men decided to ride together to a bar in Atlanta. Before they left, Allen saw Moss hand Appellant a Taurus Judge .410-caliber revolver that Allen had sold Moss two weeks prior.

All four men got in Acres' Kia Optima. Acres drove; Allen sat in the front-passenger seat; and Appellant and Moss sat in the backseat, with Appellant sitting behind Acres. As soon as the men got in the car, Moss asked Acres why he went to Moss' mother's house the previous night. Appellant suddenly joined in, demanding to know, "Man, why did you go over to my auntie's house?" Appellant became increasingly hostile, eventually pulling out Moss' revolver and pointing it at the back of Acres' head. Moss intervened, Appellant put the gun away, and Acres started driving.

At 12:34 a.m., Acres missed a turn for the interstate, and Appellant pulled out Moss' revolver and fired once into the back of Acres' head, killing him instantly. The car crashed into a telephone pole in front of a bar, the Corner Tavern. The bar's assistant manager and security guard called 911 and ran to the car, where they found Acres inside, unresponsive, with a bullet hole in the back of his head.

When the car crashed, Appellant, Allen, and Moss got out and ran in different directions. Moss called his girlfriend, who

3

immediately picked him up and took him home. Allen ran through the woods to an apartment complex, where he told someone to call 911. The police came to the apartment complex, and Allen told them that he was in a car with his friend Acres, Appellant, and another man when Appellant pulled out a gun and shot Acres in the head from the backseat. Allen described Appellant but claimed he did not know the identity of the man sitting behind him (i.e., Moss), and he also falsely claimed that Moss had "dreads." Allen was then taken to the police station, where he gave a video-recorded statement and said he could not describe Moss' appearance.

Appellant called Amber Beasley, his child's mother, and asked her to come pick him up at a gas station. Beasley went to the gas station, but Appellant did not show up. Beasley then went to the home of her friend Annabelle Florence to ask for help. Between 12:37 a.m. and 3:11 a.m., Appellant and Beasley called each other 13 times. During those calls, Appellant told Beasley that he was in the woods after shooting someone who tried to rob him. Upon realizing that Beasley was not going to pick him up, Appellant took off his

4

pants and shoes and hid them with his cell phone and Moss' revolver in the woods near where the shooting had occurred.

At around 3:40 a.m., a police officer patrolling the area saw Appellant, who appeared to be very cold, walking down the road and wearing a camouflage jacket but no pants or shoes. The officer approached Appellant and noticed that he matched Allen's description of the suspect. Appellant put his hands up and told the officer that he had been robbed. The officer arrested Appellant and drove him to the police station, where he gave a video-recorded interview after waiving his *Miranda* rights. Appellant claimed, among other things, that he was robbed at a nearby apartment complex, and he described the path that he allegedly walked from the complex to where he encountered the officer. A detective reviewed footage from city surveillance cameras along the path Appellant described but did not see Appellant on it.

Within days of the shooting, Allen asked Moss to pay him $200 for not telling the police that Moss was in the car, and Moss paid him. Appellant also spoke with Moss and asked him not to talk to

5

the police, but on February 25, 2016, Moss went to the police station and gave a video-recorded statement. Moss said that after Acres missed a turn, Appellant shot Acres in the back of the head, the car crashed, and then the three surviving men fled the scene of the crash. Moss also stated that Appellant had pointed the gun at Acres earlier in the car ride but put the gun away when Moss intervened.

While in the Coweta County jail in April 2017, Appellant told Randarious Tenney, a fellow inmate and childhood friend, that after hearing an exchange between Acres and Allen after Acres missed the turn for the interstate, he believed that he and Moss were going to be robbed. Appellant said that he pulled out the gun and shot Acres in the back of the head, and he would have shot Allen if the car had not crashed. Because Appellant also owed Tenney money for a debt incurred while they were in jail together, Appellant told Tenney where to find the clothes he hid in the woods after the shooting, as Appellant had left cash with the clothes in addition to Moss' revolver. Tenney turned this information over to investigators, who found Appellant's shoes, phone, and pants, but

not the gun or cash. Once Tenney got out of jail, Appellant called and encouraged Tenney not to testify, and later threatened to hurt Tenney the next time he saw Tenney. Also while in the Coweta County jail, Appellant confessed to another inmate, Jacob Chapman, that he shot Acres in the head, and Chapman provided a video-recorded statement to police about that conversation. Appellant then called Florence to tell her to "stay out of it," which she took to mean she should not testify at Appellant's trial.

At trial, Allen testified that Appellant shot Acres in the back of the head after previously pointing the gun at him in the car. Allen also testified that he lied about not knowing Moss because he, as a convicted felon who sold Moss the gun used to shoot Acres, wanted to distance himself from Moss. Moss initially testified that he did not know anything about the shooting. However, after being told that the defense theory was that Moss shot Acres, Moss testified that Appellant shot Acres after previously pointing the gun at him in the car. Tenney testified about what Appellant told him while in custody in the Coweta County jail, but Chapman took the stand and

7

refused to testify, so the State played a video of his police interview. Florence testified that the night of the shooting, Beasley told her that Appellant shot someone. The State played a video of Appellant's interview from the night of the shooting and entered into evidence a certified copy of Appellant's 2013 felony conviction for terroristic threats. The medical examiner testified that Acres died by a gunshot wound to the back of the head caused by a .410-caliber shotgun shell being fired into the right side of his head from between three and six inches away. A trace evidence expert testified that fibers from the backseat of Acres' car matched the camouflage jacket worn by Appellant that night.

Appellant elected not to testify in his own defense. In support of the defense theory that Moss shot Acres, Appellant called one witness who was not tendered as an expert and had no personal knowledge of the shooting or crime scene. The witness had photographed a Taurus Judge revolver being fired to document its recoil and helped defense counsel measure the circumference of a Kia Optima headrest.

2. Appellant contends that the evidence was insufficient to support the jury's verdicts because, even when viewed in the light most favorable to those verdicts, no rational trier of fact could have found Appellant guilty beyond a reasonable doubt of malice murder and possession of a firearm by a convicted felon. We disagree.

The proper standard of review for sufficiency of evidence as a matter of constitutional due process is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). This Court views the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation omitted).

Viewed in the light most favorable to the verdicts, a rational trier of fact could have found Appellant guilty on both counts. A person commits malice murder "when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). "Receiv[ing], possess[ing], or

transport[ing] a firearm" is a felony for a person "who has been convicted of a felony by a court of this state." OCGA § 16-11-131 (b). Appellant does not dispute that his 2013 felony conviction for terroristic threats made his subsequent possession of a gun illegal. And numerous witnesses identified Appellant as having shot Acres. Moreover, the night of the shooting, Beasley told Florence that Appellant had shot someone after talking to Appellant on the phone. While in the Coweta County jail, Appellant confessed to Chapman and Tenney that he shot Acres, and he also told Tenney that the gun could be found with the rest of his possessions in the woods. The two other surviving occupants of the car, Allen and Moss, both testified that Appellant shot Acres, with the shooting happening at close range to the back of Acres' head, a narrative supported by physical evidence. And Allen and Moss also both testified that Appellant had pointed the gun at Acres at least one other time in the car that evening. See *Felton v. State*, 283 Ga. 242 (657 SE2d 850) (2008) (finding evidence sufficient to support a malice murder conviction where the defendant pointed a gun at the victim, left, and then

10

returned and shot the victim). Appellant then pressured several people not to testify against him. See *Flannigan v. State*, 305 Ga. 57, 62 (823 SE2d 743) (2019) ("In Georgia, 'evidence of a defendant's attempt to influence or intimidate a witness can serve as circumstantial evidence of guilt.'" (citation omitted)).

Although Appellant argues that Allen and Moss were not credible witnesses because they used drugs and lied at various points during the investigation, "it is axiomatic that resolving evidentiary conflicts and assessing witness credibility are within the exclusive province of the jury." *Graves v. State*, 298 Ga. 551, 553 (783 SE2d 891) (2016). Moreover, the evidence that Appellant shot Acres was overwhelming. Thus, the evidence was sufficient as a matter of constitutional due process for a rational trier of fact to have found Appellant guilty beyond a reasonable doubt of malice murder and possession of a firearm by a convicted felon.

*Judgment affirmed. All the Justices concur.*