317 Ga. 1
FINAL COPY

S23A0436.  ALLEN v. THE STATE.

PETERSON, Presiding Justice.

Sean Allen appeals his conviction for felony murder for the shooting death of Daquan Gillett.[1] Allen argues that (1) the trial court erred when it failed to grant him immunity from prosecution based on self-defense; (2) the evidence presented at trial was insufficient to support his conviction; (3) the trial court erred by limiting his ability to argue the law of self-defense in closing argument; and (4) trial counsel was ineffective in several respects. We conclude that the evidence authorized the trial court to deny

---

[1] The shooting took place on May 7, 2021. On June 10, 2021, a Fayette County grand jury returned an indictment charging Allen with malice murder, felony murder, and aggravated assault. At a December 2021 trial, a jury found Allen not guilty of malice murder and guilty of felony murder and aggravated assault. The trial court sentenced Allen to life in prison on the felony murder count; the aggravated assault count merged. On January 4, 2022, Allen filed a motion for new trial, which was amended by appellate counsel on January 10, 2022, and August 23, 2022. The trial court denied the motion as amended on October 19, 2022. Allen filed a timely notice of appeal and the case was docketed to this Court's April 2023 term and submitted for consideration on the briefs.

Allen's claim of immunity, the evidence was sufficient to support Allen's convictions, and the trial court's error in limiting Allen's closing argument did not prejudice his defense. Regarding Allen's claims of ineffective assistance of counsel, we conclude that one claim was not preserved for appellate review, and the other claims fail because Allen has failed to show prejudice from any of the other alleged instances of deficient performance. We therefore affirm.

After Allen was indicted for malice murder and other charges, he filed a motion for immunity from prosecution under OCGA § 16-3-24.2 based on a claim of self-defense. At a hearing on the motion, a video recording of the shooting (with no audio) was admitted into evidence, and Allen and another witness testified in support of Allen's motion.

The video recording[2] captured the shooting of Daquan Gillett

---

[2] The video was also admitted at trial. The exhibit submitted to this Court as the recording admitted at the immunity hearing appears to contain only one camera angle, although the prosecutor at points during the hearing referred to "zoom[ing] in" on the video. The separate exhibit submitted to this Court as used in the trial itself includes recordings from several different parts of the park and time periods, although it appears that only some of those recordings were shown to the jury.

2

at a Fayette County park and shows the following. Daquan[3] and his twin brother Davon[4] were playing with water guns in a parking lot with other teenagers. Allen[5] entered that area of the parking lot with several others, greeted Neeko Page,[6] then spoke to Davon. Daquan punched Allen, leading to a brief physical skirmish among the Gillett brothers and Allen's group. Allen dropped a firearm, after which Jonathan Alexander, who was with Allen's group, started hopping away.[7] Daquan apparently picked up the gun, at which point Allen started hitting him. Davon grabbed and held Allen. Allen's friend, Jeffery Stephens,[8] was slammed against a car. Jamir

---

[3] Daquan was identified in testimony at trial and at the immunity hearing as appearing in the video wearing a white shirt, dark shorts, and white leggings.

[4] Davon was identified at trial and at the immunity hearing as appearing in the video in blue or purple shorts and a black shirt.

[5] Allen was identified both at trial and at the immunity hearing as appearing in the video wearing no shirt.

[6] "Neeko" was identified at trial as being seen in the video exchanging a greeting with Allen when Allen approached.

[7] Alexander was identified at trial as a shirtless young man in the video who was initially holding a firearm, then was struck in the foot with a bullet; at the immunity hearing, he was identified as a person appearing on the video "with the pants" who "flinches," having been shot in the foot.

[8] At trial, Stephens identified himself in the video as wearing a gray sweatshirt. The spelling of Stephens's last name is inconsistent in the record; we use the spelling used in the trial transcript.

Culbreath,[9] from Allen's group, pointed a gun or other object straight into the air. Culbreath and Daquan pointed guns at one another, then Daquan appears to have lowered his gun before he disappeared between two cars. Davon released Allen, who then appears to have retrieved a firearm and shot Daquan while Daquan was partially hidden from camera view between the cars.

Allen testified at the immunity hearing as follows. Allen's group went to the parking lot looking for Page so they would have a fifth player for their basketball game. When Allen asked Davon where Page was, Davon and Daquan asked Allen why he was talking to Davon, both brothers referring to Allen as the "opp"; Allen explained in his hearing testimony that this meant "enemy" or "opposition." Allen then started to walk away but was "hit from behind" or "jumped" by multiple people. Allen heard a gun fire, then realized his own gun had fallen from his pants. Allen saw Daquan pointing a gun at him and his friends. Davon then put Allen in a

---

[9] Culbreath was identified in testimony at trial as a person in the video who appears to point a gun into the air.

chokehold when Allen tried to retrieve his gun. When Davon had Allen in a chokehold, Davon told Allen that Allen was "over with" and was "fixing to die." Allen felt like he was going to pass out and his ears were ringing. While Allen was still in the chokehold, Daquan hit him in the face with a gun. Allen again heard a gun fire, and Davon then let him go. Allen started to walk away, but saw Daquan pointing a gun, so he took a gun from Culbreath. Allen shot Daquan after he heard Davon telling Daquan to shoot Allen. "I felt like he was fixing to kill me," Allen testified. "He already told me that he was going to kill me; he just told his brother to shoot me."

Stephens gave testimony generally consistent with Allen's, testifying that Daquan was still pointing the gun at Allen, Stephens, and Culbreath when Allen "retaliated" and shot Daquan.[10]

The trial court orally denied the motion for immunity at the conclusion of the hearing, stating that "a reasonable person would

---

[10] Alexander also testified in support of Allen at the hearing, but Alexander's testimony was stricken after he invoked his right against compelled self-incrimination under the Fifth Amendment to the United States Constitution and refused to answer additional questions.

not feel that force was justified in this matter." The trial court found the following facts: Allen was not looking for Page when he came into the parking lot and approached Davon, Allen chose to hit Daquan when he had a chance to walk away from the fight, and Allen shot Daquan after Daquan had lowered the gun he was holding.

At the subsequent jury trial, in addition to viewing the surveillance video of the incident, the jury heard from several eyewitnesses for the State. Davon testified that when Allen approached his group on the day of the shooting, Allen called them "fake opps" or "opps" and mentioned "something about Instagram." Davon testified that Allen told Daquan to "stop talking before I hit you with this fire" or "shoot you with this fire," referring to the firearm visible in Allen's pants. Davon testified that he later tackled Allen so that Allen could not pick up his gun from the ground. Davon balked at saying that he put Allen in a chokehold but acknowledged he was "holding him tight." But when Davon let Allen go, Davon

said, Allen retrieved another gun and shot Daquan.[11]

A young woman who was at the water fight, Mariah Washington, testified that when Allen approached her group, he stated, "this is the guy that was talking," but she didn't know which Gillett twin he was referencing. Both Washington and another young woman, Kierra Munford, recalled that Page was at the water fight and greeted Allen with a handshake when he approached; Munford recalled hearing Allen calling out Page's name as he approached the group. Munford's boyfriend, Dejuan Thurman, testified that the physical altercation began when Allen approached the twins and said something to Davon like "why you trying to be a fake opp."

Munford testified that, a few months before the shooting, Allen had posted on Instagram a video of Daquan rapping, leading to an unfriendly exchange on Instagram between Allen and Daquan.

---

[11] Allen challenged Davon's testimony by introducing evidence of his comments to police at the scene of the crime, where he said he "didn't really see what happened," and a subsequent interview in which he said nothing about Allen calling the Gilletts "fake opps" or "opps" and denied the fight was over a dispute on Instagram.

Allen's Instagram account was deleted the morning after the shooting. The State elicited vague testimony from a detective that law enforcement found evidence "in Mr. Alexander's phone that there was some indication or planning of an altercation at this park."

The medical examiner testified that Daquan died from gunshot wounds to the back of his head and his left thigh, with the relative amount of bleeding from each suggesting that the wound to the head occurred first.

Allen testified at trial as follows. Before the day of the shooting, Allen had no disputes with the Gillett brothers. Allen had just greeted Page at the park when Davon approached him saying, "why you here; you opp; we don't mess with you"; both brothers referred to Allen as "opp." Allen replied that he was not worried about being "opp" and was simply looking for Page. Allen did not threaten to shoot anyone that day. Allen was tussling with Daquan and Daquan's hand was on Allen's gun when it discharged before falling to the ground. After Allen picked up his weapon, he told Daquan to "let it go" and end the fight. But when Allen's gun fell to the ground

8

again, one of the Gilletts' friends punched Allen in the face, Davon put him in a chokehold, and Daquan hit him with a gun. Davon said, "you over with, you fixing to die" while choking Allen. Allen shot Daquan in self-defense while Daquan was pointing a gun at him, and Davon was saying to Daquan, "shoot, shoot."

Allen also called several other witnesses at trial. Stephens again testified, giving an account similar to Allen's. Stephens testified that when Allen shot Daquan, Daquan was in between cars but still pointing a gun at Allen. Jamir Culbreath offered similar testimony. Culbreath testified that Daquan was still pointing a gun at him and Allen, and Davon was saying "shoot, shoot," when Allen took the gun that Culbreath was holding and shot Daquan. Two other friends of Allen testified that although they did not actually meet up with Allen's group prior to the shooting, they had planned to meet simply to play basketball.

1.    Allen argues that the trial court erred by denying his motion for immunity. We disagree.

With some exceptions, a person who uses threats or force in

9

accordance with OCGA § 16-3-21 is immune from criminal prosecution. See OCGA § 16-3-24.2. OCGA § 16-3-21 (a) provides a standard with both subjective and objective components: a person generally "is justified in using force which is intended or likely to cause death or great bodily harm . . . if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person[.]" In addition to showing that the defendant actually believed that his use of force was necessary, in order "[t]o establish justification for killing another, a defendant must show the circumstances were such as to excite the fears of a reasonable person" that he or a third person faced death or great bodily injury; in other words, a defendant must show that his fear was objectively reasonable. *Howard v. State*, 298 Ga. 396, 398 (1) (782 SE2d 255) (2016) (citation and punctuation omitted). "To prevail on a motion for immunity under OCGA § 16-3-24.2, a defendant must establish his justification defense by a preponderance of the evidence." *Ellison v. State*, 313 Ga. 107, 110 (868 SE2d 189) (2022). "In reviewing the denial of a motion for

10

pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." Id. (citation and punctuation omitted). "In so doing, however, we may consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility such as facts indisputably discernible from a videotape." *State v. Burton*, 314 Ga. 637, 642 (2) (878 SE2d 515) (2022) (citation and punctuation omitted) (explaining standard of review in context of motion to suppress), disapproved on other grounds by *Clark v. State*, 315 Ga. 423, 434-435 (3) (b) & n.16 (883 SE2d 317) (2023). "On the other hand, to the extent that legally significant facts were proved by evidence other than the video recording, the trial court as factfinder was entitled to determine the credibility and weight of that other evidence." *Burton*, 314 Ga. at 642 (2) (citation and punctuation omitted).

Here, the trial court was authorized to conclude that Allen did

11

not meet his burden at the pretrial hearing. Although Stephens testified at the hearing that Daquan was still pointing a gun at Allen when Allen shot him, the video evidence shows that Daquan lowered his gun before he was partially obscured by a car. Thus, the video does not show that the trial court's finding that Daquan was not pointing a gun at Allen when Allen fired was erroneous, and we defer to the trial court's finding. See *Johnson v. State*, 304 Ga. 610, 614 (2) & n.4 (820 SE2d 690) (2018) (affirming denial of immunity where "video recording appear[ed] to be consistent with the trial court's observations noted during the pretrial hearing"). And although Allen testified at the hearing that he shot Daquan after Davon told Daquan to shoot Allen, a trial court as the finder of fact considering a claim of immunity is not required to credit testimony merely because it is unrebutted. Cf. *Johnson v. State*, 290 Ga. 382, 384 (2) (a) (721 SE2d 851) (2012) (noting in the context of the trial court's consideration of a motion for new trial based on ineffective assistance of counsel that "a trial court is not required to credit testimony merely because it is unrebutted"). Indeed, Allen's own

12

testimony, in which he claimed he was justified in shooting Daquan, could itself be considered by the trial court as evidence that Allen shot Daquan under circumstances that did *not* support a basis for immunity, given that the trial court discredited that testimony — explicitly rejecting the part about looking for Page — and there is other evidence corroborating that conclusion. Cf. *Mims v. State*, 310 Ga. 853, 855 (854 SE2d 742) (2021). The trial court "was authorized not only to reject [Allen's] self-serving testimony but also to conclude that he had not met his burden to prove justification so as to entitle him to immunity." *Ellison*, 313 Ga. at 111 (affirming denial of immunity where trial court explicitly discredited defendant's testimony about the circumstances of the shooting); see also *Hughes v. State*, 312 Ga. 149, 157-158 (4) (861 SE2d 94) (2021) (trial court authorized to find that defendant failed to carry his burden that he was entitled to immunity where the trial court did not credit defendant's testimony that the victim had a gun and the defendant could not escape the house where confrontation occurred).

2. Allen next argues that the trial court should have granted

13

him a new trial because the evidence presented at trial was insufficient to support his conviction. We disagree.

In considering a claim that evidence was insufficient in violation of federal due process under *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), "our review is limited to an evaluation of whether the trial evidence, when viewed in the light most favorable to the verdicts, is sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted." *Goodman v. State*, 313 Ga. 762, 766 (2) (a) (873 SE2d 150) (2022) (citation and punctuation omitted). We "put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." Id. at 766-767 (2) (a) (citation and punctuation omitted).

We conclude that the evidence admitted at trial was sufficient to sustain the verdict. Allen admitted that he intentionally shot Daquan; the only question was whether that shooting was legally justified. "When a defendant presents evidence that he was justified

14

in using deadly force, the State bears the burden of disproving the defense beyond a reasonable doubt." *Williams v. State*, 316 Ga. 147, 150 (1) (886 SE2d 818) (2023) (citation and punctuation omitted). But "[i]t is the role of the jury to evaluate the evidence and, when doing so, the jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense." Id. (citation and punctuation omitted); see also *Gibbs v. State*, 309 Ga. 562, 565 (847 SE2d 156) (2020) ("[T]he question of justification . . . is for the jury to decide."). The jury heard Davon's testimony that Allen threatened to shoot Daquan shortly after approaching the brothers. And although Davon disclaimed knowledge of whether Daquan was pointing a gun at Allen when he was shot, the jury saw video evidence that Daquan lowered the gun he was holding just before Allen shot him, undermining Allen's claim that Daquan was pointing a gun at Allen's group when he was shot. When viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to reject Allen's claim of self-

defense and find him guilty beyond a reasonable doubt of felony murder. See *Carter v. State*, 310 Ga. 559, 561-562 (1) (b) (852 SE2d 542) (2020) (sufficient evidence for the jury to conclude that Appellant was the initial aggressor in the confrontation and thereby reject his justification defense, as he entered a grocery store parking lot at 1:00 a.m. and ran toward the victim with his gun drawn and a t-shirt wrapped around his face, shouting "Don't move"); *Manning v. State*, 303 Ga. 723, 724 (1) (814 SE2d 730) (2018) (jury authorized to reject self-defense claim, where evidence showed that Appellant made threatening remarks to the victim just before shooting him).

3. Allen argues that the trial court erred by limiting his counsel's ability to argue the law of self-defense in closing argument. We conclude that any error by the trial court in this regard was harmless.

During closing argument, defense counsel recited the law on self-defense. When counsel began to discuss the law on the absence of a duty to retreat, the trial court interrupted him, saying "you're reading from the jury charge" and "I'm going to charge this jury."

16

When counsel explained that he "didn't want to read from anything other than your charges," the trial court replied, "it's really improper argument to be reading the jury charges that I'm going to charge." "Okay," counsel replied. "Because we — [w]e'll let you charge it, Judge." Defense counsel completed his closing argument shortly thereafter.

Although this Court has limited parties' ability to read from case law in arguments to the jury because the text of court decisions might include language that does not reflect principles of law or may include principles that the court has decided not to charge the jury on, we have said that counsel may refer to "law that the court is going to give in charge." *Conklin v. State*, 254 Ga. 558, 570-571 (10) (b) (331 SE2d 532) (1985). Thus, assuming Allen preserved the error for ordinary appellate review, the trial court erred in instructing Allen's counsel that he could not read from the charge that the court was expected to give the jury. But we conclude that this error was harmless.

"A nonconstitutional error is harmless if the State shows that

it is highly probable that the error did not contribute to the verdict[.]" *Smith v. State*, 313 Ga. 584, 587 (872 SE2d 262) (2022) (citation and punctuation omitted). The only thing the trial court prevented counsel from saying in closing argument was an explanation of the law on self-defense that the trial court itself later gave the jury during jury instructions. In those instructions, the court told the jury that a person who is not the aggressor does not have a duty to retreat, the portion of the charge on self-defense that the interruption apparently stopped counsel from reciting. It is highly probable that the trial court's direction preventing counsel from further reciting the same instructions that the court ultimately gave to the jury did not contribute to the verdict. See *Minter v. State*, 266 Ga. 73, 74-75 (2) (463 SE2d 119) (1995) (error in prohibiting defense counsel from discussing law on verdicts of guilty but mentally ill and not guilty by reason of insanity in closing argument was harmless, as trial court correctly instructed jury on that same law).

4.    Finally, Allen argues that he was deprived of effective

18

assistance of counsel in a number of respects. We conclude that Allen failed to preserve one of his claims of ineffectiveness and has not met his burden regarding the others.

To succeed on his claim of ineffective assistance of counsel, Allen must show that counsel's performance was deficient and that counsel's deficient performance prejudiced Allen's defense. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "If [a defendant] fails to establish one of these two prongs, we need not examine the other." *Payne v. State*, 314 Ga. 322, 328 (3) (877 SE2d 202) (2022) (citation and punctuation omitted). "To establish prejudice, [a defendant] must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." Id. at 329 (3) (citation and punctuation omitted). "In reviewing a ruling on a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact unless they are clearly erroneous, but we apply the law to the facts de novo." Id. (citation and punctuation omitted).

(a) Allen first argues that counsel was ineffective for failing

to have Allen's mental health evaluated. We conclude that Allen has not shown prejudice from any deficient performance in this regard.

Within two weeks of a scheduled trial date in the case, Allen's counsel indicated that he was seeking a mental health expert to evaluate Allen before trial. The State filed a motion for a continuance, purportedly on Allen's behalf, stating that defense counsel had contacted the State and indicated that the defense had identified an expert to perform a mental health evaluation of Allen, but the expert would not be able to complete the evaluation by a deadline previously imposed by the trial court. At a hearing on the motion for continuance, defense counsel said the defense would "essentially concede that there's no basis for a continuance" and "we're not going forward with an expert witness." The trial court stated that the defense had "put not only the State, but the Court, in a precarious position," telling defense counsel that if the court excluded any mental health evidence based on the defense's tardiness in notifying the State of a mental-health defense, and Allen were convicted, at "some point down the line it's going to be

20

raised that you didn't explore this defense and you're going to be deemed ineffective." Defense counsel insisted that he was ready for trial, that Allen had "no mental health issues," that the defense at trial would be self-defense, that the possible mental health evaluation mentioned to the State "was just a private screening for our own benefit," and that his client wanted to proceed to trial and not pursue a mental health evaluation. Counsel added that "in most of my capital cases, matter of protocol, we would recommend some type of screening." The trial court granted the motion for a continuance. Counsel did not have Allen evaluated by a mental health professional before trial. At a hearing on Allen's motion for new trial, trial counsel testified that, although the mental health of all of his clients was a concern, and he did not recall why Allen was not evaluated, "I saw that his self-defense was the defense, and I didn't see where this was an insanity defense."

Allen has not met his burden to show that he was prejudiced by any failure by counsel to seek a mental health evaluation.

In Georgia, a defendant is presumed to be sane. Further,

21

the burden is on the defendant to show that he has a mental condition that should have been investigated and offered as proof of a defense to criminal liability or of his incompetence to stand trial. It is not enough to show merely that counsel unreasonably failed to inquire into Appellant's mental state — he must show a reasonable probability that such an evaluation would have affected the outcome at trial.

*Shelton v. State*, 313 Ga. 161, 171 (3) (b) (869 SE2d 377) (2022) (citations and punctuation omitted). Here, Allen failed to present at the motion for new trial stage any expert testimony or other evidence indicating that he has in fact suffered from mental illness at any point, let alone at the time of the crime such that he would be able to avoid criminal responsibility or at the time of trial such that he would be incompetent to stand trial. Therefore, Allen "has failed to establish that there is a reasonable probability that the result of his trial would have been different had his trial counsel requested an evaluation[.]" Id.; see also *Devega v. State*, 286 Ga. 448, 450 (4) (a) (689 SE2d 293) (2010); *Cormier v. State*, 277 Ga. 607, 608-609 (2) (a) (592 SE2d 841) (2004).

(b)    Allen next argues that trial counsel was ineffective in that he failed to secure a videography expert to testify at trial. Again, we

conclude that Allen has not proven that any deficient performance prejudiced his case.[12]

Allen appears to argue that a video expert was necessary to introduce an enhanced version of the surveillance video shown at trial, such that the jury would have been better able to see details of the events in question. Allen has not shown he was prejudiced by any failure on the part of counsel to secure the testimony of a video expert. It appears that the jury was able to view some enhanced video of the events in question, or at least video that was "zoomed in" on the key players. Moreover, "[i]n assessing the prejudicial effect of counsel's failure to call a witness (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a petitioner is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case." *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615

---

[12] To the extent Allen also claims that counsel was ineffective for failing to secure the testimony of other experts, he has abandoned that claim by failing to support it with argument, authority, or citation to the record. See Supreme Court Rule 22.

(458 SE2d 623) (1995). "Either the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony." *Dickens v. State*, 280 Ga. 320, 322 (2) (627 SE2d 587) (2006). Allen did not present the testimony of a video expert at the motion for new trial hearing, or provide an affidavit as a substitute for such testimony.

Allen points to trial counsel's testimony at the motion for new trial hearing about "enhancements" to the video performed by a video expert (whom he apparently retained but did not call at trial) and the importance of that to the defense. But "a defendant cannot use defense counsel's testimony about what an uncalled witness had been expected to say in order to establish the truth of that uncalled witness's testimony." *Dickens*, 280 Ga. at 322 (2). And Allen did not introduce at the motion for new trial stage any actual testimony of a video expert or any "enhanced" video. Therefore, we cannot conclude that there is a reasonable probability that the result of the trial would have been different had trial counsel presented the testimony of a video expert. See *Richardson-Bethea v. State*, 301 Ga.

24

859, 864 (2) (804 SE2d 372) (2017) ("Appellant cannot rely on what some hypothetical expert might say" in claiming that trial counsel's failure to present expert testimony to the jury prejudiced her case); *Woods v. State*, 275 Ga. 844, 849-850 (3) (d) (573 SE2d 394) (2002) (defendant cannot show prejudice from counsel's failure to use videotape at trial, where defendant never introduced tape itself into evidence).

(c) Allen next argues that trial counsel provided ineffective assistance by failing to meet with or subpoena Page, the friend for whom Allen purportedly was looking when he approached the Gillett twins. For reasons similar to the reasons we rejected the claims of ineffective assistance discussed above, we conclude that Allen cannot prove he was prejudiced by any such deficiency.

Trial counsel testified at the motion for new trial hearing that the defense had a phone number for Page, had spoken to at least one member of his family, and believed him to be attending college outside of Georgia, but the defense "couldn't locate him." "[T]rial counsel cannot be held constitutionally deficient for failing to

25

investigate or call a witness whose whereabouts are unknown[.]" *Thurman v. State*, 311 Ga. 277, 279 (857 SE2d 234) (2021) (citation and punctuation omitted). But the trial court made no findings with respect to whether Page's whereabouts were unknown, instead rejecting Allen's claim on the basis that he failed to produce Page's testimony at the motion for new trial hearing. We agree with the trial court's conclusion and conclude that Allen failed to show prejudice. As explained above with respect to other claims of ineffective assistance, Allen's failure to introduce Page's testimony or an acceptable substitute is fatal to this claim.

(d)   Allen also argues that trial counsel was ineffective for failing to object to the trial court's interruption of his closing argument. We conclude that Allen cannot show prejudice from any deficient performance in this regard. As discussed above in addressing a related claim of trial court error, the trial court's direction prevented counsel from including in closing argument only the very jury instructions on self-defense that the trial court would give the jury. Allen cannot show that counsel's failure to object to

26

this direction prejudiced his defense.

(e)    Finally, Allen argues that trial counsel was ineffective for failing timely to move for a directed verdict. But he has not preserved this claim for review.

After the State had rested, before beginning the defense case, defense counsel noted for the record that he ordinarily might "make a motion for [directed] verdict" at that point in the case but would "not do so in this case . . . at this particular time." The jury later found Allen not guilty of malice murder and guilty of felony murder and aggravated assault. After the verdict was returned and the jury was polled, counsel moved for a "directed verdict," asking the court to sit "as the [thirteenth] juror" and "modify its sentence to a manslaughter, as opposed to the sentence — the charges that was based on here; because, overwhelming[ly], the evidence would not support the malice murder, felony murder, [and] aggravated assault." The trial court responded by stating that "the time for a directed verdict has long passed," noting that the defendant had failed to seek an instruction on manslaughter, and stating that

27

"[s]itting as the [thirteenth] juror . . . your request is denied[,]" before proceeding into a sentencing hearing.

"Ineffectiveness claims must be raised and pursued at the earliest practicable moment, which for a claim of ineffective assistance of trial counsel is at the motion for new trial stage if the defendant is no longer represented by the attorney who represented him at trial." *Patterson v. State,* 314 Ga. 167, 171 (2) (a) (875 SE2d 771) (2022). Allen did not raise this particular claim of ineffectiveness in his initial motion for new trial or the amendments made thereto by appellate counsel. He did not raise such a claim in the hearing on the motion. Although Allen did question counsel about this issue at the hearing on the motion, "questioning during the motion-for-new-trial hearing, by itself, is insufficient to amend a motion for new trial to add a claim where the trial court did not rule on the claim." Id. The trial court did not address in its order denying the motion for new trial a claim that counsel was ineffective for failing to timely make a motion for directed verdict. Allen therefore forfeited any such claim. See id.

(f)    Allen argues that all of trial counsel's errors "produced a cumulative prejudicial effect that prevented [him] from receiving a fair trial." "[I]t is the prejudice arising from counsel's errors that is constitutionally relevant, not that each individual error by counsel should be considered in a vacuum." *Schofield v. Holsey*, 281 Ga. 809, 811 (II) n.1 (642 SE2d 56) (2007) (citation and punctuation omitted), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 17 (1) (838 SE2d 808) (2020). Here, Allen has not shown that the cumulative prejudice from any assumed deficiencies discussed above showed a reasonable probability that the results of the proceeding would have been different in the absence of the alleged deficiencies. Allen did not introduce the sort of evidence necessary to show that he was prejudiced in any way by counsel's alleged deficiencies of failing to have Allen's mental health evaluated, failing to present the testimony of a video expert, or failing to meet with or subpoena Page, so there is no prejudice to accumulate. This leaves the issue of counsel's failure to object to the trial court's interruption of his argument. But, as discussed above, this did not harm Allen's defense

29

at all because this failure, at most, meant that counsel was unable to recite the very same instructions that the court then gave the jury in its charge.[13] Accordingly, Allen has failed to show that the combined effect of the aspects of counsel's performance that we presume were deficient for purposes of our analysis constituted prejudice sufficient to sustain his ineffective assistance of counsel claims, and this final enumeration of error fails.

*Judgment affirmed. All the Justices concur.*

---

[13] Allen does not explicitly argue that the combined deficiencies of counsel, along with any alleged error by the trial court, should result in reversal. See *Lane*, 308 Ga. at 17 (1). And although we conclude that the trial court erred in directing Allen's counsel not to recite in his closing argument the instructions that the court would give the jury, we have made clear that this error, like counsel's failure to object to the interruption, did not prejudice Allen's case at all and thus there was no prejudice to accumulate.

Decided July 5, 2023 — Reconsideration denied August 21, 2023.

Murder. Fayette Superior Court. Before Judge Coker.

*SK Law Group, Scott R. King*, for appellant.

*Marie G. Broder, District Attorney, Elizabeth A. Baker, C. Monique Harris, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth H. Brock, Assistant Attorney General*, for appellee.