321 Ga. 554
FINAL COPY

S25A0075. WESTON v. THE STATE.

BETHEL, Justice.

Jaquan Dontae Weston was convicted of malice murder and other crimes in connection with the shooting death of his father, Leroy Weston ("Leroy").[1] On appeal, Weston argues that the evidence was insufficient to support his conviction for malice murder

---

[1] The crimes occurred between March 5-6, 2018. In June 2018, a Terrell County grand jury indicted Weston for malice murder (Count 1), possession of a firearm during the commission of a felony (Count 2), and cruelty to children in the third degree (Count 3). At an October 2019 jury trial, Weston was found guilty of all counts. The trial court sentenced Weston to serve life in prison without the possibility of parole on Count 1, five years consecutive on Count 2, and 12 months concurrent on Count 3.

Weston filed a timely motion for new trial on October 22, 2019, which was amended with new counsel. Following a hearing, the trial court entered an order denying the motion, as amended, on June 12, 2023. Weston then filed a timely notice of appeal, and his appeal was docketed in this Court as Case No. S24A0278. However, after Weston's appellate counsel failed to file a principal brief, the appeal was stricken from the docket and remanded with instruction that the trial court determine whether counsel had abandoned Weston. Following a hearing, the trial court determined that appellate counsel had abandoned Weston, and new counsel was appointed to represent Weston for purposes of his direct appeal. Thereafter, the trial court clerk transmitted related additional records to this Court, and Weston's appeal was re-docketed to this Court's term beginning in December 2024 and submitted for a decision on the briefs.

and asserts that his trial counsel was ineffective in a number of ways. For the reasons that follow, we affirm.

1. Construed in the light most favorable to the verdicts, the evidence at trial showed the following. Sometime on or around March 5, 2018, Weston's three-year-old child, J. J., disclosed that Leroy, her grandfather, had hurt her vaginal area. Weston became emotional at this disclosure and stated that he was "going to get" Leroy and shoot him.

After drinking alcohol with the husband of J. J.'s maternal grandmother, Weston went out at approximately 11:00 p.m., indicating that he was going to visit a friend. At 11:49 p.m., Weston called J. J.'s maternal grandmother and inquired about a burn barrel at her house. Weston did not return for some time, and Shontrell Jackson, J. J.'s mother, was unable to locate Weston. Eventually, Weston showed up at the home of J. J.'s maternal grandmother.

A short time later, around 1:00 a.m., Jackson accompanied Weston, at his request, to Leroy's house. Upon entering the

residence, Jackson and Weston discovered Leroy's body in the hallway with several gunshot wounds. According to Jackson, Weston became distraught upon seeing the body. Weston and Jackson reported their discovery to the police. When police arrived at Leroy's home, they found, among other things, a significant amount of blood on Leroy's bed, numerous blood stains throughout the house, and a shoeprint that was later determined to be similar to the shoes Weston wore on the night of the crimes.

Later that day, while Jackson was driving Weston to the police station to answer questions, Weston jumped out of the vehicle with a knife, confessed that he killed Leroy, and indicated that he was going to hurt himself. Officers found Weston with a knife and multiple injuries to his neck, wrists, and lower abdomen. In an interview, which was played for the jury, Weston's four-year-old son, who was staying with Leroy on the night of the crimes, reported that Weston "beat" Leroy and that Leroy fell to the ground and did not get up. Weston's son also told Jackson's sister that Weston shot Leroy.

2. On appeal, Weston first challenges the sufficiency of the evidence supporting his conviction for malice murder. In Weston's view, the evidence supported, at most, a conviction for voluntary manslaughter because he became emotional, threatened to shoot, and actually did shoot Leroy only after his daughter's outcry against Leroy. As such, Weston says, the evidence at trial showed that he killed Leroy as the result of a sudden, violent, and irresistible passion that was reasonable under the circumstances. See OCGA § 16-5-2 (a) ("A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.").[2] We disagree.

"The proper standard of review for sufficiency of [the] evidence as a matter of constitutional due process is whether any rational

---

[2] Weston requested a jury instruction on voluntary manslaughter, which was given.

4

trier of fact could have found the defendant guilty beyond a reasonable doubt." *Turner v. State*, 315 Ga. 274, 278 (2) (882 SE2d 241) (2022) (citing *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979)). We view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted). And the question of "whether or not a provocation, if any, is such a serious provocation as would be sufficient to excite a sudden, violent, and irresistible passion in a reasonable person, reducing the offense from murder to manslaughter, is generally for the jury." *Browder v. State*, 294 Ga. 188, 190 (1) (751 SE2d 354) (2013) (citation and punctuation omitted).

A person commits malice murder "when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a).

For a malice murder conviction, the requisite criminal

5

> intent is that of malice, which incorporates the intent to kill. The malice necessary to establish malice murder may be formed in an instant, as long as it is present at the time of the killing. Whether a killing was intentional and malicious is for the jury to determine.

*Scoggins v. State*, 317 Ga. 832, 836 (1) (a) (896 SE2d 476) (2023) (citations and punctuation omitted).

In this case, the evidence at trial authorized the jury to find that Weston formed the intent and malice necessary to return a guilty verdict for malice murder. Specifically, the evidence showed that, following J. J.'s outcry, Weston became emotional and threatened to shoot Leroy. And after some time had passed, a portion of which Weston had spent drinking alcohol, Weston admittedly did just that. The evidence also showed that, around the time of the crimes, Weston called Jackson's mother to inquire about a burn barrel, from which the reasonable inference could be drawn that Weston sought to dispose of evidence of his crimes. Based on this evidence, the jury was entitled to find Weston guilty beyond a reasonable doubt of malice murder. See *Wigfall v. State*, 274 Ga. 672, 672-673 (1) (558 SE2d 389) (2002) (concluding that jury was

6

authorized to find appellant guilty of malice murder rather than voluntary manslaughter where victim made unwanted sexual advances toward appellant's mother, refused to leave after being asked, and cursed at and hit appellant with a metal chair, and appellant then retrieved a gun from her purse, went outside, and shot and killed the victim as he was walking away).

Moreover, the evidence also supported a finding that there was "an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard" — specifically, the long interlude between J. J.'s outcry and Leroy's death — in which case the voluntary manslaughter statute instructs that "the killing shall be attributed to deliberate revenge and be punished as murder." OCGA § 16-5-2 (a). See also *Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015) ("[T]hat [appellant] discussed the matter with his cellmate, procured the shank, and then later went in search of [the victim], was evidence that [appellant] acted in a rational and calculating fashion rather than solely as a result of a sudden, violent, and irresistible passion." (citation and punctuation

omitted)). For this additional reason, Weston's claim fails.

3. Weston next argues that his trial counsel rendered constitutionally ineffective assistance in a number of ways. We conclude that Weston failed to preserve two claims of ineffectiveness and has not met his burden regarding the other.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced him. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, [a defendant] must show that trial counsel performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms." *Waters v. State*, 317 Ga. 822, 829 (3) (b) (896 SE2d 507) (2023) (citation and punctuation omitted). "To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." *Allen v. State*, 317 Ga. 1, 9 (4) (890 SE2d 700) (2023) (citation and

8

punctuation omitted). "We need not address both components of the inquiry if a defendant makes an insufficient showing on one." *Grier v. State*, 313 Ga. 236, 246 (4) (869 SE2d 423) (2022).

(a) Weston first argues that his trial counsel was ineffective by failing to "fully investigate" Weston's competency to stand trial and to request a competency hearing, and by failing to object to a witness's interview on the grounds that it constituted improper bolstering. "To preserve the issue of ineffective assistance of previous counsel, new counsel must raise the issue at the earliest practicable opportunity of post-conviction review or the issue is waived." *McIntyre v. State*, 312 Ga. 531, 536 (3) (863 SE2d 166) (2021) (citation and punctuation omitted). And here, Weston did not raise these claims in his motion for new trial, and the court did not rule on them. Accordingly, these claims are not preserved for appellate review. See id. See also *Prince v. State*, 295 Ga. 788, 793 (2) (b) (764 SE2d 362) (2014) (claim of ineffective assistance not preserved where defendant failed to raise the issue in his amended motion for new trial, failed to raise the claim at the hearing on that

motion, and failed to obtain a ruling on it from the trial court).[3]

(b) In his sole claim of ineffective assistance preserved for appellate review, Weston argues that trial counsel was ineffective for failing to obtain an expert evaluation as to his sanity at the time of the crimes and to enter a plea of not guilty by reason of insanity on Weston's behalf. Weston acknowledges that he was twice evaluated for his competency to stand trial and in fact was found competent to stand trial. Weston asserts, however, that trial counsel also should have sought an expert evaluation to determine whether Weston had "the mental capacity to distinguish between right and

---

[3] Based on the trial court's finding that Weston's prior appellate counsel had abandoned him, Weston has filed a motion to remand for the trial court to hold another hearing so that his current appellate counsel could offer more evidence in support of his ineffectiveness claims regarding competency and sanity. But the court found that prior appellate counsel had abandoned him after moving for a new trial and filing an appeal to this Court. The court did not make any findings regarding prior counsel's performance before the appeal was docketed in this Court, and Weston does not raise a claim of ineffectiveness of prior post-conviction counsel as error in his appeal. Accordingly, the trial court's finding regarding prior counsel's abandonment does not support remand. To the extent Weston wishes to pursue a claim that post-conviction counsel was ineffective by failing to raise and adduce evidence at the hearing on the motion for new trial in support of his claims regarding competency and sanity, "he must do so through a petition for a writ of habeas corpus." *King v. State*, 304 Ga. 349, 351 (2) (818 SE2d 612) (2018); *Moore v. State*, 311 Ga. 506, 513 (6) (858 SE2d 676) (2021). Weston's motion for remand in this case is therefore denied.

wrong" at the time of the crimes. See OCGA § 16-3-2 ("A person shall not be found guilty of a crime if, at the time of the act, omission, or negligence constituting the crime, the person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence."). It is true that "[a] defendant may have mental capacity to be placed on trial, and yet be insane within the contemplation of the law as to responsibility for a criminal act." *Mims v. State*, 304 Ga. 851, 856 (2) (a) (823 SE2d 325) (2019) (citation and punctuation omitted). But here, the record indicates that counsel did, in fact, move for an evaluation of Weston's sanity and that an order to evaluate the same was entered. Accordingly, counsel was not deficient for failing to file a motion that she did actually file.

Moreover, while the results of that assessment do not appear in the record, the trial court found that there was no evidence that Weston was insane at the time of the murder. And Weston failed to present at the motion for new trial stage any expert testimony or other evidence indicating that he has in fact suffered from mental

11

illness at any point, let alone at the time of the crime such that he would be able to avoid criminal responsibility or at the time of trial to such an extent that he would be incompetent to stand trial. See *Allen*, 317 Ga. at 10 (4) (a). Therefore, Weston "has failed to establish that there is a reasonable probability that the result of his trial would have been different had his trial counsel requested an evaluation" and attempted to enter a plea based on such an assessment. Id. (citation and punctuation omitted). Because he cannot establish the requisite prejudice, his claim of ineffectiveness therefore fails on this ground, as well.

*Judgment affirmed. Peterson, C. J., Warren, P. J., and Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ., concur.*

Decided May 13, 2025.

Murder. Terrell Superior Court. Before Judge Earnest.

*Angela B. Dillon*, for appellant.

*R. Victor McNease, Jr., District Attorney, Thomas S. Bishop, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Eric C. Peters, Assistant Attorney General*, for appellee.